We are compelled to deny the petition for rehearing.                                           Rehearing Denied.

McBride, C. J., and Bean and Belt, JJ., concur.

---

Argued March 31, reversed and dismissed April 27, 1926.

# A. G. SPEXARTH *v.* RHODE ISLAND INSURANCE CO.

(245 Pac. 515.)

**Reformation of Instruments—Equity will Reform Writing on Clear Showing That by Mutual Mistake It Does not Correspond With Actual Contract.**

1. If it clearly appears that written memorial, by mutual mistake, does not correspond with actual contract, court of equity will reform it, so as to speak real truth, and enforce it as amended.

**Reformation of Instruments—Contract will not be Amended to Conform to Understanding of One Party, Unless Preponderance of Evidence Shows Other Understood It in Same Way.**

2. Court of equity will not make new contract, nor amend one made, so as to conform solely to understanding of one party when contract was made, unless it appears by preponderance of evidence that other party understood it in same way.

---

1. See 23 R. C. L. 327.
2. See 23 R. C. L. 311.

Reformation of Instruments—Party, Induced to Make Contract by Fraud of Other Party, may have It Rescinded on Proper Showing.

3.    One, induced unwittingly to make contract by fraud of other party, may have it rescinded by decree in equity on proper showing, but cannot make, nor have court make, new one.

Reformation of Instruments—Evidence Held Insufficient to Warrant Amendment of Fire Insurance Policy by Striking Out Reduced Rate Average Clause and Enforcement Thereof as Straight Insurance Policy (§ 6457, Or. L.).

4.    Evidence *held* insufficient to warrant setting aside or amending fire insurance policy by striking out reduced rate average clause, sanctioned by Section 6457, Or. L., and enforcing it as straight insurance policy.

Evidence—Insured Held Entitled to Presumption That Ordinary Course of Business, Under Which Insurance Could not be Effected Without Reduced Rate Average Clause, Sought to be Stricken Out, was Followed (§ 799, Subd. 20, Or. L.).

5.    In suit to reform fire insurance policy by striking out reduced rate average clause, and enforce it as straight insurance policy, defendant insurer was entitled to aid of presumption, under Section 799, subdivision 20, Or. L., that ordinary course of insurance business, under which insurance could not be effected on building of kind covered for terms and at rate written without employing such clause, was followed.

---

Contracts, 13 **C. J.**, p. 525, n. 37.
Evidence, 22 **C. J.**, p. 103, n. 68, 69, 70.
Fire Insurance, 26 **C. J.**, p. 102, n. 40, p. 103, n. 43, p. 105, n. 51, 53, 54, 55, p. 362, n. 91.
Reformation of Instruments, 34 **Cyc.**, p. 908, n. 38, p. 915, n. 84, p. 917, n. 87, p. 918, n. 88, p. 919, n. 92, p. 980, n. 4, p. 984, n. 34.

From Clatsop: J. A. EAKIN, Judge.

Department 1.

REVERSED AND DISMISSED.

For appellant there was a brief over the name of *Messrs. Veazie & Veazie,* with an oral argument by *Mr. J. C. Veazie.*

---

3.    Reformation of instrument for mistake superinduced or accompanied by fraud or inequitable conduct, see notes in 28 **L. R. A.** (N. S.) 851; 22 **A. L. R.** 507. See, also, 23 **R. C. L.** 328.

For respondent there was a brief over the name of *Mr. A. C. Fulton,* with an oral argument by *Mr. G. C. Fulton.*

BURNETT, J.—This is a suit to reform, as for mutual mistake, an insurance policy issued by the defendant company to the plaintiff, insuring his building in Astoria against loss by fire occurring at any time during the three-year period beginning June 25, 1921. The building was damaged by the great fire in Astoria on December 8, 1922.

The policy is admitted by the plaintiff to be correct according to the alleged actual contract between the parties except for the following stipulation, appearing in the policy really issued:

"Reduced Rate Average Clause. In consideration of the reduced rate at which, and the form under which this policy is written, it is expressly stipulated and made a condition of the contract that, in event of loss, this company shall be liable for no greater proportion thereof than the amount hereby insured bears to Ninety per cent. (90%) of the actual value of the property described herein at the time when such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon."

The plaintiff seeks to have the quoted clause stricken out of the policy and then to have it enforced as what is known as a straight insurance policy.

1. As a matter of law it is unquestioned that if, by a mistake in which both parties participated, the written memorial does not correspond with the actual contract made by them, and that condition is made clearly to appear, a court of equity will reform the written instrument so as to make it speak the real

truth as to the covenant between them and enforce it as amended.

2. On the other hand, a court of equity will not make a new contract for the parties nor amend one already made so as to conform solely to the understanding of one of the parties at the time the contract was made, unless it shall also appear, by preponderance of the evidence that the other party understood the contract in the same way. In other words, although the plaintiff may fully establish that he understood the contract, as he claims in his complaint to have understood it, yet unless he can show also that at the time the contract was made the other party understood it the same way, the plaintiff must fail because under those conditions there would not be a meeting of minds sufficient to form any contract whatever.

3. A distinction must be drawn also between correcting a mistake and the cancellation of a contract, written indeed, but to which the assent of one was procured by fraud, surprise or mistake. If one is induced unwittingly to make a contract by the fraud of the other party he may, on proper showing, have the covenant rescinded by a decree in equity, but he cannot make a new agreement and the court will not make one for him. Generally, and particularly in this instance, the question is one of fact in which the plaintiff must clearly prove that the contract actually made was as he states it to have been and that both parties assented to the same thing. In other words, he must show by clear preponderance of the testimony that the attitude of mind towards the terms of the transaction was identical in both the plaintiff and the defendant. The plaintiff claims that the contract, as made, in very truth was that in the event of loss or damage by fire, occurring to his building within

the three-year term mentioned, the defendant would pay him the full loss or damage occurring to the same, not exceeding $2,000. The defendant denies that statement and avers that the contract was drawn strictly in accordance with the understanding of the parties had at the time, with the result that in case of loss the defendant would pay only such proportion of the loss as the sum of $2,000, the amount insured, bears to 90 per cent of the actual value of the property at the time when the loss happened; nor for more than the proportion which the policy bears to the total insurance.

We note in passing that among the conditions required to be inserted in a fire insurance policy by the laws of this state, Section 6457, Or. L., is the following:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto. Liability for re-insurance shall be as specifically agreed hereon."

Thus it is that proportional insurance has the sanction of the statute.

4. As the policy stands, it is as if the defendant company had insured to the extent of $2,000, a building worth, say, $100,000, and the Spexarth Insurance Company has insured the building for $98,000, in which event, in case of the total loss of the whole

building, the defendant company would pay $2,000, and the Spexarth Insurance Company would pay $98,000. For less than a total loss each would pay in the same proportion, but neither to the full amount of the policy. The question then to be determined is whether some such arrangement was made between the parties, resulting in the formation of the policy in question, or whether the contract was for straight insurance whereby in case the actual loss exceeded $2,000 the defendant should pay, without reference to any other insurance or risk assumed.

In substance, the plaintiff testifies that for some time previous to the issuance of the policy in question he had been carrying $10,000 straight insurance on the building in question. He proposed to reduce it to $2,000 when he was informed that at the regular rates a $2,000 policy would cost him almost as much as a $10,000 policy. He then applied to the local agent of the defendant company, who said, as the plaintiff testifies:

"I will write that at the same rate, Two Thousand Dollars in a good Company. And when a loss to the tune of Two Thousand Dollars occurs, you will get Two Thousand Dollars, or you get any other sum up to Two Thousand Dollars."

He says, on direct examination, that he told the agent to write that policy and that he never knew of a coinsurance policy until he wanted the money after the fire. Although he was very clear on direct examination as to the exact statement made to him by the local agent of the defendant company, yet he could not remember the details or anything of the terms or conversations leading to any other insurance policies which he had at the time of the fire. On cross-examination he testified further as follows:

"Q. Do you remember what your old rate was on straight insurance?

"A. No.

"Q. Well, you know what the difference was between the rate under the co-insurance policy and the rate under the old straight policy?

"A. No.

"Q. You know there was quite a substantial difference?

"A. There was considerable and that is why I asked so little insurance, and I asked the Company to take very little risk and I took a whole lot of risk.

"Q. And you understood that in consideration of that, you were getting a reduced rate?

"A. A lower rate, yes. * *

"Q. But now you say that you understood that the Company was to carry a risk of two thousand and you were to carry a risk of a hundred thousand?

"A. Yes.

"Q. And you understood that in consideration of that, you were getting a lower rate of premium?

"A. I was to get a three year policy because the Company need have no fear that I would set the house afire because of high insurance."

In addition to this, there is in evidence a letter written by the plaintiff under the date of "Astoria, Oregon, December 21, 1922," addressed to the Pacific Coast Adjustment Bureau, in which occurred the following language, as his statement of the contract:

"A few years ago, I carried a policy of $10,000 on the concrete building hereinafter mentioned, and to the best of my memory, it was with the Northwestern National Insurance Company of Milwaukee. I took this policy out through Mr. Dunbar, Vice-President of the Astoria Abstract Company, and he informs me that his records in regard to this have been destroyed. At the time I took this policy out, I owed $10,000 on this building. When I reduced the debt to $2,000, the above mentioned policy expired and Mr. Dunbar

wished to renew it for the $10,000. I told him that I owed only $2,000 on the building and that this amount was all the insurance which I thought necessary to carry. He informed me that it would cost almost as much to carry the $2,000 as the $10,000. I asked him how that was, and he stated that he did not make the rules but it was nevertheless a fact. Then I went to Mr. K. Osburn, the Agent for the Rhode Island Ins. Co., and he told me that he could write a $2,000 policy for lots less. He explained that he would write me a co-insurance policy, and that then the Company and myself would be partners, that is, they would take a risk for $2,000 and I take a risk for $100,000. Mr. Osburn at that time knew that I did not carry any more insurance and that I did not intend to, for I told him so very plainly and he said that was alright as I was then taking a chance on $100,000 and his Company was taking a chance on $2,000.

"It is my candid opinion that at that time Mr. Osburn, the Agent of the Rhode Island Ins. Co., did not know what a co-insurance policy was or that he knows what it is now, as he told me yesterday that I would have no difficulty in collecting the entire $2,000."

There is testimony as to the regular course of business and classification of buildings for insurance rates in Astoria, according to which the building in question was not eligible for insurance for more than one year without a reduced rate average clause of at least 70 per cent, so that in case insurance is desired for more than a period of one year at a lower rate the insurer must be given the advantage of the reduced rate average clause in the policy.

The agent who issued the policy appears to be a very reluctant witness, but he testified that the rate charged in this policy was lower than the straight insurance rate, and that the policy was written and

issued as the parties agreed upon at the time. He says:

"We talked about the rate and it was—all parties, I am very sure, knew the difference in rate. This policy carried a lower rate, it being a ninety per cent co-insurance clause and a three year policy carried a lower rate than a one-year policy. For instance, this policy is for three years and he gets that for two, for double the one year premium."

He also testified that the plaintiff could not do that without the coinsurance clause:

"No, not as I understand it—I don't know of any—I don't know of any rule or clause under which a three year policy on that kind of building could be—I don't know of any rules or ratings under which that class of a building can be insured for three years.

"Q. Without the co-insurance clause?

"A. Yes, sure."

The witness maintains that the policy was written and issued in conformity with the negotiations of the parties. The effect of the whole testimony is that the plaintiff was dissatisfied with the straight insurance under the regular terms and rates. He sought something cheaper. He got something cheaper. If there had not been any loss nothing would have been heard of the matter, but now that the loss has occurred he essays to modify the contract by means of the correction of an alleged mistake, so as to make it one of straight insurance, which originally he sought to discard and that, too, while taking advantage of the reduced rate upon which the policy was issued.

5. Balancing the account of evidence, so to speak, we have on one side the oral statement of the plaintiff that this was to be a straight insurance policy. Opposing this, on the opposite side of the account, is

the testimony of the agent that the policy, as written, is what both parties agreed upon at the time. Supporting this is the plaintiff's own letter phrasing the matter as a partnership in which his risk was $100,000, and that of the defendant only $2,000, leaving the inference that as between themselves as partners they would pay losses in proportion to their interest in the business. Moreover there is the testimony that, in the ordinary course of insurance business, straight insurance cannot be effected on a building of the kind in question for the terms and at the rate written in this instance, without employing the reduced rate average clause which the plaintiff seeks to eliminate. In this connection the defendant is entitled to the aid of the presumption "that the ordinary course of business has been followed": Or. L., § 799, subd. 20.

We must remember that no question of fraud is involved. In alleging a mistake the plaintiff undertook to prove by a preponderance of the testimony that his present conception of the contract is identical with that of both parties when the policy was written. In our judgment, after careful reading of the record, the plaintiff has not produced that preponderance of testimony required to set aside or amend a plain writing issued at the time. The result is that the decree of the Circuit Court is reversed and the suit must be dismissed.

REVERSED AND SUIT DISMISSED.

McBRIDE, C. J., and COSHOW and RAND, JJ., concur.