Argued May 12, reversed June 30, 1954

## GENERAL ELECTRIC SUPPLY CORP. *v.*
## REPUBLIC CONSTRUCTION CORP.

272 P. 2d 201

*Arno H. Denecke,* Portland, argued the cause for appellant. With him on the brief were Wilbur, Mautz, Souther & Spaulding, Portland.

*Edward A. Boyrie,* Portland, argued the cause for respondent. With him on the brief was F. Brock Miller, Portland.

Before LATOURETTE, Chief Justice, and WARNER, LUSK, BRAND and PERRY, Justices.

LATOURETTE, C.J.

Appeal by Republic Construction Corporation, defendant, from a decree rescinding a written contract entered into between plaintiff General Electric Supply Corporation and defendant, wherein plaintiff agreed to sell to defendant certain apartment house kitchen equipment for the sum of $93,503.27, and from a judgment against the defendant in the sum of $30,150.

The amended complaint is predicated on two causes of suit, the first being that plaintiff made a unilateral mistake in submitting its bid to defendant with actual or constructive knowledge on the part of defendant for which rescission is prayed, and, secondly, that there was a mutual mistake in the execution of the contract between the parties for which reformation is asked.

The facts are that defendant had a contract to build the Ione Plaza apartment house in Portland for the sum of two and one-half million dollars. Prior to the awarding of such contract, and on December 7, 1949, defendant procured from plaintiff a written statement offering to furnish the equipment in question for the sum of $126,531.90. Later on, negotiations were had between plaintiff and defendant, defendant urging plaintiff to bring its bid down because its competitors were ''away lower'', when finally on or shortly after July 7, 1950, after certain changes were made in the plans and specifications concerning such equipment, plaintiff verbally offered to sell to defendant such equipment for the sum of $93,503.27. Thereupon,

on July 11, 1950, in conformity with the verbal understanding, plaintiff prepared a written contract itemizing the various units involved and submitted it to the defendant. The contract was then formally entered into between the parties, plaintiff agreeing to sell to defendant the units in question for the sum of $93,503.27. Deliveries of the kitchen equipment thereupon ensued, following which the defendant issued bills of sale to the Commerce Mortgage Company, the party that was putting up the money on the contract.

On May 3, 1951, plaintiff notified defendant in writing that it had made an error and mistake in submitting the bid of $93,503.27 and that on account thereof elected to and did rescind the contract entered into between them and tendered back to the defendant $83,664.14 theretofore paid to plaintiff by defendant and demanded a return of the equipment in question, which demand was refused by defendant.

Since the equipment went into the building, which placed it beyond the power of defendant to return, the court, in addition to rescinding the contract, entered judgment against defendant for the amount of the discrepancy.

■ There is no evidence in this case of mutual mistake between the parties warranting reformation, that being the basis of plaintiff's second cause of suit. The written contract between the parties truly reflected their oral agreement, and, in such circumstance, there can be no mutual mistake that would justify reformation. *Manning Lumber Co. v. Voget,* 188 Or 486, 216 P2d 674; *Spexarth v. Rhode Island Insurance Co.,* 118 Or 22, 245 P2d 515. The trial court evidently took this view of the matter since the decree ordered rescission rather than reformation.

Plaintiff's first cause of suit is predicated on a unilateral mistake for which it asks rescission of the contract. The basis for such mistake is that in preparing the kitchen equipment work sheet on July 7, 1950, a mistake was made in figuring a subtotal. This work sheet consisted of 26 units, unit prices, subtotals and a grand total. One of the units consisted of 100 Pullman kitchens listed at $335 per kitchen. The subtotal carried forward was $3,350 instead of $33,500.

■ To grant a complainant rescission on account of a unilateral mistake it is necessary that the mistake be basic and known to the other party, or that circumstances are such that the other party, as a reasonable person, should have known of the same. *Rushlight Co. v. City of Portland,* 189 Or 194, 244, 219 P2d 732.

■ There is no evidence of actual knowledge of the alleged mistake on the part of defendant. The question posed, then, is whether or not defendant, as a reasonable person, under the circumstances, should have known of the same.

It is first contended by plaintiff that the disparity between its preliminary bid of December 7, 1949, of $126,531.90 and the final bid of July 7, 1950, of $93,-503.27 was so great as to put defendant on notice of plaintiff's mistake.

The evidence discloses that on a number of occasions defendant told plaintiff to get its bid down to meet competition and plaintiff suggested that if certain changes were made in the plans and specifications such end might be attained. These changes were effectuated, and Mr. David D. Seeley, the employee handling builder and apartment sales projects and

builder activities, who negotiated the deal, and Mrs. Marion Hughes, who did the kitchen planning, checked dealers, made up and helped to price the equipment list, and Mr. Paget, general sales manager, all of whom were plaintiff's employees, thought that such changes were accountable for the disparity in price. Mr. Seeley testified:

"A When I went in to talk to him [Mr. Paget] we discussed that originally we were too high and that we had bid $126,000.00, and that through the changes that we had been able to effect in design and type of equipment that we had been able to bring it down to $93,000.00."

The following is the testimony of Mrs. Hughes:

"Q. Just one question, Mrs. Hughes: You were under the impression, weren't you, that because of the changes in the number of cabinets into two instead of four, and the sizes of the cabinets, that you were able to offer a substantial reduction in price on the cabinets to Republic Construction Corporation? A. Yes, I was. I thought that was what did it."

Since plaintiff thought that the changes were responsible for the reduced price, defendant could reasonably indulge in the same belief.

It is claimed that Mr. Leveck, vice president of defendant corporation, urged an immediate signing of the contract after he saw the work sheet in question and by thus snapping up the bargain an inference should be drawn that Mr. Leveck was cognizant of the mistake. We do not believe that such an inference is warranted. Mr. Seeley's testimony discloses that the $93,000 bid was submitted to Mr. Leveck between July 7 and July 11, the contract being signed on the latter date; that Mr. Leveck at that time requested Mr. Seeley to reduce the bid further; and that there-

upon Mr. Seeley returned to his office and rechecked the figures with the assistance of his comptometer employees and returned the next morning to Mr. Leveck's office, the day before the contract was signed. Thereupon the bid was accepted and Mr. Seeley returned to his office and prepared the contract that was executed on the General Electric Company form. The record shows that at the request of Mr. Leveck a contract, dated July 12, on defendant's form, was signed by the parties. It is practically identical to the General Electric contract of July 11.

The claim is made that on the occasion of the last meeting Mr. Seeley went over the figures and prices with Mr. Leveck and Mr. Seeley handed Mr. Leveck the work sheet in question; that thereupon he absented himself to his inner office for a period of ten or twelve minutes and upon returning announced that he would accept the bid. There is no evidence as to what occurred in the private office excepting the testimony of Mr. Leveck and Mr. Bellerby, his assistant, that the only matters discussed were the number of units and the lump sum bid. It will be noted that Mr. Seeley fixed the date of this meeting as the day before the contract was signed, and, further, that Mr. Seeley prepared the July 11 contract on the General Electric Company's form. We do not believe that this evidences a snapping up of the bargain.

How the plaintiff could charge defendant with notice of the mistake from such circumstances, when it claims it did not know of the same, is beyond comprehension. It will be remembered that such work sheet was dated July 7, 1950, some four days before the execution of the contract. It was in the possession of the plaintiff during this period of time. The evidence

discloses that not only did Mr. Seeley and Mrs. Hughes check and recheck the same but that Mr. Paget and plaintiff's comptometer operators also went over the figures. It occurs to us that with so many fingers in the pie someone should have plucked out the plum. Therefore, if defendant should have had knowledge of the mistake a fortiori plaintiff should have had knowledge.

The view we have taken of this case makes it unnecessary for us to go into the matter of the alleged negligence on the part of plaintiff, its inability to place defendant in statu quo, or the affirmance of the contract by plaintiff after the discovery of the mistake by cashing the check of defendant and delivering materials to the job.

Reversed.