**POLEY-ABRAMS CORPORATION,**
Plaintiff,

v.

**CHANEY AND JAMES CONSTRUCTION COMPANY, Inc., Defendant.**

Civ. A. No. 62–366.

United States District Court
D. Massachusetts.

Aug. 14, 1963.

Wendell F. Grimes, Brighton, Mass., Barry J. Walker, Bikofsky & Walker, Framingham, Mass., for plaintiffs.

Samuel Hoar, Jr., Allan van Gestel, Goodwin, Procter & Hoar, Boston, Mass., for defendant.

JULIAN, District Judge.

Poley-Abrams Corporation, plaintiff, brought this action against Chaney and James Construction Company, Inc., defendant, to obtain rescission and restitution, or reformation, of a written contract.

### Findings of Fact

The facts necessary to confer jurisdiction on the Court under 28 U.S.C. § 1332 have been stipulated.

Both corporations are construction companies. Poley-Abrams has its principal place of business in Massachusetts; Chaney and James, in Texas.

On June 5, 1961, the defendant was awarded the prime contract by the Federal Aviation Agency (FAA) for the construction of an Air Route Traffic Control Center (ARTCC) at Nashua, New Hampshire, for the bid price of $2,028,359 (Exhibit 1).

On July 23, 1961, Croslin, a representative of the defendant, telephoned a representative of the plaintiff and stated that Chaney and James was interested in subcontracting the concrete work for the ARTCC facility at Nashua, and invited the plaintiff to submit a bid. A conversation ensued on the following day between Croslin and Abrams, president of the plaintiff corporation, as a result of which Abrams agreed to submit a bid on all phases of the concrete work. On the evening of the same day, Abrams, Croslin, and Hannah, who was superintendent for Chaney and James, met to negotiate the subcontract. It is conceded that all three had authority to act for their respective corporations. At this conference Abrams submitted a proposal of $233,000. He arrived at this amount before going to the conference by using the same bid summary sheets he had prepared about seven weeks earlier when he submitted a similar proposal to Electronic Missile Facility, another general contractor that had bid on the Nashua job. In preparing the bid for Electronic Missile, Abrams had by mistake transcribed a labor cost item of $53,951 from the

estimating sheet to a bid summary sheet as $5,395. The difference between the two figures, of course, was $48,556.

When preparing the bid to be submitted to Chaney and James, Abrams copied on his work sheet the erroneous figure of $5,395 from the bid summary sheet he used in preparing the bid for Electronic Missile. Thus, a substantial error of $48,556 was injected into the computation of the bid of $233,000 submitted by Abrams to Croslin.

At no time were the bid sheets, estimating sheets, or work sheets used by Abrams in the preparation of the plaintiff's bids ever shown, or their contents otherwise disclosed, to Croslin or to any other person connected with the defendant. No itemized breakdown of the bid was ever given to the defendant or any of its agents, nor did Abrams or any other person connected with the plaintiff ever disclose how Abrams arrived at the amount of any of the bids.

During the conference that took place on the evening of July 24, Croslin told Abrams to exclude from the bid the reinforcing steel materials and the masonry work. Abrams deducted from the $233,000 proposal a lump sum of $39,000 for the steel and a lump sum of $20,000 for the masonry, leaving $174,000. Abrams was also told by the defendant's representatives that the contract was on a tight time schedule and that the concrete work was to be completed by October 1, 1961. Abrams assured them that this presented no problem; that the plaintiff had extensive experience in doing this type of work, efficient crews, 60,000 square feet of plywood forms on hand and available for the concrete work, and could do the job in only two pourings.

Croslin then asked Abrams to submit a price on certain additional work not included in the plaintiff's $174,000 bid. Abrams stated that he would go back to his office and work on a price.

On July 25 Abrams again met with the defendant's representatives and submitted a price of $60,600 for the addi-

tional work. To this amount was added $1,700 for a bond and $200 for dovetail slots. The total subcontract price submitted by the plaintiff at this conference was $236,500. Abrams was told by Croslin to return to his office, to go over all his figures, to visit the job site and look at the rock and footings, and to call Croslin the following morning to "firm up" the price.

On the following day, July 26, Abrams telephoned Croslin and informed him that he had checked his take-off and pricing sheets and found that he had made an error on the curbing and that $2,000 should be added to the bid; that he had found the rock "ragged" and that another $2,000 was to be added; that $1,500 more was to be added for rock at the manhole sites. These items, added to the previous total of $236,500, made the plaintiff's final bid $242,000. This was the amount agreed upon. Later that day the subcontract agreement (Exhibit 5) was signed by Abrams for the plaintiff and by Croslin for Chaney and James.

By training and experience both Abrams and Croslin were well qualified to estimate costs and to prepare bid prices in the field of construction.

Prior to accepting the plaintiff's final bid, Croslin had estimated that the cost to the defendant of the work covered by the plaintiff's proposal of $174,000 would have been approximately $201,000, including overhead.

Prior to accepting the plaintiff's final bid Croslin had also estimated that the cost to the defendant of the work covered by the plaintiff's final bid of $242,000 would have been approximately $245,000. At the trial this latter figure was changed to approximately $250,000 by the addition of a $5,000 item which Croslin had omitted by mistake when he worked out his estimate of $245,000.

It is not uncommon in the construction field for a subcontractor to submit a bid that is below the cost estimated by the general contractor for the same work and for the general contractor to accept

the bid if the subcontractor is reliable and can perform the work. Chaney and James also took into account the fact that Poley-Abrams was a local contractor and would be able to obtain better prices from suppliers, better cooperation from the unions, more reliable estimates of local costs, and incur less expense in moving equipment, than a contractor based in a distant state.

The plaintiff began performance of the subcontract about August 1, 1961. Within three weeks thereafter it caused cost control cards to be prepared so that costs could be periodically reviewed as the work progressed. The items of cost written on the cards were taken from the plaintiff's bid sheets. Abrams had the amount of $30,535 placed on the labor cost card as the item of labor cost for the work covered by the plaintiff's proposal of $174,000.

The work under the subcontract which the plaintiff was to have completed by October 1961 was not substantially completed until February 1962.

The plaintiff first became aware that labor costs were running higher than estimated sometime in October 1961. Despite repeated efforts by Abrams to ascertain the reason for the high labor costs, the error was not discovered until February 1962. On February 16, 1962, the plaintiff notified the defendant by letter of the error the plaintiff had made in the preparation of its bid.

The plaintiff claims that when the defendant accepted the plaintiff's bid, the defendant or its agents knew or had reason to know that the plaintiff's bid was materially in error. The plaintiff contends that the proposal of $174,000 was so low that the defendant must have known or had reason to know that the plaintiff had made a material mistake in the preparation of its bid.

■ The plaintiff has proved by clear and convincing evidence that in transcribing the figure $53,951 from one sheet to another in the course of computing the bid to be submitted to the defendant, Abrams left out the last digit and wrote down $5,395, and that this error materially reduced the amount of the final bid of $242,000 which was submitted by the plaintiff and accepted by the defendant.

The mistake was entirely the plaintiff's own, and was not induced in any way by the defendant or its agents.

The plaintiff claims that the defendant "snapped up" the plaintiff's proposal of $174,000 and that this indicated an awareness on the part of the defendant that the bid was unreasonably low. I find that there was no "snapping up" of any bid by the defendant.

■ The plaintiff has failed to prove by clear and convincing evidence, or even by a preponderance of the credible evidence, that the defendant or any of its agents at any time before it received the plaintiff's letter of February 16, 1962, either knew or had reason to know that the plaintiff had made an error in the preparation of its bid. On the contrary, I find that neither the defendant nor any of its agents knew that the plaintiff was acting under a mistake when it submitted any of its bids. I further find that the defendant and its agents had no reason to know that the plaintiff was acting under a mistake either because of the amount of the plaintiff's bids or because of any other information they had received from any source.

### Conclusions of Law

■ To be entitled to rescission or reformation on the ground of a unilateral mistake the plaintiff must prove by clear and convincing evidence that the mistake formed a basis on which it entered into the contract, and that the defendant knew or had reason to know of the mistake. Restatement of the Law of Contracts, §§ 503 and 511; General Electric Supply Corp. v. Republic Const. Corp., 1954, 201 Or. 690, 272 P.2d 201; see United States v. Conti, 1941, 1 Cir., 119 F.2d 652; Bowes Co. v. Milton, 1926, 255 Mass. 228, 151 N.E. 116; 5 Williston on Contracts (Rev.Ed.), §§ 1557, 1573 and 1597; 3 Corbin on Contracts (1960 ed.), § 609, p. 689, and §

615, p. 743; and German American Ins. Co. v. Davis, 1881, 131 Mass. 316.

 On the facts found, the plaintiff is not entitled to recover.

Judgment will be entered dismissing the action on the merits.