Argued December 5, 1973, affirmed February 22, petition for rehearing denied March 19, 1974

# INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 701, ET AL, *Respondents,* v. CENTRAL NATIONAL LIFE INSURANCE COMPANY, *Appellant.*

519 P2d 85

*W. Eugene Hansen,* Salt Lake City, Utah, argued the cause for appellant. With him on the briefs were Nielson, Conder, Hansen and Henriod, Salt Lake City, and Charles Paulson, Portland.

*Don S. Willner,* Portland, argued the cause for respondents. With him on the brief were. Willner, Bennett, Meyers, Riggs & Skarstad, Portland.

O'CONNELL, C. J.

This action was brought by plaintiff union to recover money damages from defendant insurance company for breach of a contract of insurance. The trial court held in favor of plaintiff. Defendant appeals.

Plaintiff is one of thirty-six local unions, all of which are members of Western States Conference of Operating Engineers. In late 1970, defendant, in competition with other insurance carriers, presented the Western Conference of Operating Engineers with the

lowest bid for a group life insurance policy. On January 15, 1971, twenty-two of the thirty-six local unions of the Western Conference authorized the Conference president and secretary to sign an application on behalf of the Conference for a master group life insurance policy to be issued by defendant. This application contained a clause which recited, in part:

> "It is desired that the insurance become effective on January 1, 1971 or as soon thereafter as the company shall have received payment on account of the premium, the required completed applications from at least 75% of each Local Union of the eligible individuals."

Thereafter, this application was amended to permit enrollment up to July 1, 1971. Eleven local unions in the Western Conference enrolled in this policy.[1] Local 701 enrolled its members on April 1, 1971. This policy contained a three-year term guaranteed rate clause. Local 701 paid premiums and received benefits to be distributed to the named beneficiaries of local members until August 19, 1971. On that date, defendant, which had begun to lose money on the policy, sent the following letter to each enrolled local:

> "This letter is to serve as a notice that the premiums are no longer guaranteed as outlined in the above mentioned contract.
>
> "Since the Presidential wage price freeze prevents us from increasing premiums, we have no other alternative other than to cancel the above contract effective August 1, 1971."[2]

---

[1] Local 3 subsequently lost coverage when its level of participants dropped below 75%.

[2] Because the master policy provided for a three-year term guaranteed rate, it is not contended that this letter stated a sufficient reason to cancel the policy.

Thereafter, plaintiff secured comparable insurance from another company and instituted this action to recover the difference between the premiums due under the new policy and those which would have been paid under the Central National policy.

■ Defendant contends that it was entitled to cancel the policy because it erred in calculating the premiums needed to render the contract profitable and plaintiff knew or should have known of the error. This contention is without merit because no evidence of such knowledge on plaintiff's part was adduced at trial. Indeed, plaintiff produced evidence showing that defendant's bid was in the same range as other bids submitted and considered in late 1970. In addition, there was evidence that Central National's agent represented to union officials that his company was offering a low rate in order to break into the western market. Under these circumstances, we find no evidence that plaintiff had actual or constructive knowledge of defendant's unilateral mistaken calculations. Thus, defendant's alleged error does not constitute grounds for relief.[⑨]

■ Defendant next contends that with plaintiff's knowledge the vice-president of Central National, who negotiated the contract in question, exceeded his authority and thus could not and did not bind defendant. This contention is without substantial evidentiary foundation. In fact, the evidence would seem to prove the contrary. There is in evidence a letter from the president of Central National Life to the vice-president congratulating him on his success in securing the Western Conference contract. Moreover, even assuming the agent did exceed his authority, there was no

[⑨] Milton J. Wershow Co. v. McVeety Machinery Co., 263 Or 97, 500 P2d 696 (1972).

evidence that plaintiff had knowledge of this fact. In addition, in accepting premiums from and paying out benefits to Local 701 for at least four and one half months, defendant clearly ratified the contract.

■ Next defendant contends that the president of the Western Conference lacked authority to bind the local unions because the bylaws of the Western Conference did not empower the Conference to contract for group life insurance. This contention is without merit. Defendant has no standing to assert the alleged lack of authority because the action of the locals at the January 15, 1971 meeting ratified the Conference officer's action.④

■ Finally, defendant argues that the language of the application for insurance submitted to defendant (which is set out above), requiring that the company receive applications from "at least 75% of each Local Union of the eligible individuals" means that the policy was not to become binding until 75% of the members of *every* local in the Western Conference had qualified for coverage. Thus it argues that because only eleven of the thirty-six locals enrolled in the group plan, the agreement never became effective.

This is not a reasonable construction of the contract provision. The attendant circumstances at the time of the negotiation for and execution of the contract indicate that the 75% requirement was intended to refer to the enrollment by each individual union. It was understood at that time that only some of the member locals were interested in this program. Moreover, it was understood that individual locals would be enrolled as soon as each had signed up 75% of its own

④ Restatement, Agency § 292.

membership. This, in fact, was how enrollment was effected. Indeed, Local 3, which was at one time enrolled in the plan, was dropped, individually, when its level of participation fell below 75%. Moreover, the company accepted the applications tendered by the locals, including the application of Local 701, and billed premiums and paid benefits directly to the individual locals. The company sent its letter of cancellation not to the Conference, but to the ten individual locals which were then enrolled. Finally, we think it is significant in construing the intent of the parties that when the company sought to relieve itself of the policy obligations, it did not assert that the policy had never become effective, but rather that an effective policy was being cancelled. From all this, we are of the opinion that the provision must be construed as authorizing the issuance of a policy to each individual union which enrolled 75% of its membership.

Defendant raises other issues for the first time on appeal which do not merit discussion.

Judgment affirmed.