ROBERTSON, *Plaintiff-Appellant, Cross-Respondent,*
*v.*
JONES et al, *Defendants and Third Party Plaintiffs-*
*Respondents, Cross-Appellants.*
(TC 418-598, SC 24673)
571 P2d 905

Robert B. Carlson, Portland, argued the cause and filed a brief for appellant, cross-respondent.

R. William Riggs of Willner, Bennett, Riggs & Skarstad, Portland, argued the cause and filed a brief for respondents, cross-appellants Jones.

Before Howell, Presiding Justice, Lent and Linde, Justices, and Tompkins, Justice pro tempore.

LINDE, J.

## LINDE, J.

Plaintiff, as the buyer in a contract for the sale of a home, appeals from a decree denying her specific performance and instead awarding her $700 in damages. Defendant sellers cross-appeal from the award of damages. The central question presented on this review *de novo,* ORS 19.125(3), is whether specific performance should be granted on the following facts.

Mrs. Lida Jones and her daughter, Gretchen Jones, listed their home for sale with a real estate broker. Realizing that a sale financed by an FHA-secured loan would be subject to a discount or "points" reducing the net payment to them, they indicated that they did not wish to sell on those terms. Defendants' broker caused the home to be listed in a multiple listing book which contains in a standardized format the basic information used by real estate brokers with potential buyers. The item relating to possible FHA financing of the Jones's home was filled in "Exp yes." According to defendants' agent, "Exp" meant that the consequences of FHA financing had been explained to sellers.

Plaintiff employed her own real estate agent, Phyllis Jenkins, to negotiate a purchase of the Jones home, to be financed by an FHA-secured loan. Jenkins made an appointment with the defendants' agent, Sandra Askelson, to meet with the Jones at their home to consider plaintiff's offer. Defendants Jones believed that it was to be a cash offer. Jenkins arrived some 15 minutes before Askelson. When she disclosed that plaintiff's terms were for FHA financing rather than cash, Mrs. Jones became upset. Nothing more was done until the Jones's agent, Askelson, arrived. The participants then negotiated for some time toward resolving the disadvantage of FHA terms to defendants, with the result that the price offered in plaintiff's proposed earnest money agreement was increased from $26,950 to $27,400, and defendants signed this document. Plaintiff's agent then took the document back to plaintiff, who in turn agreed to the

increased price. After Jenkins left, defendants were still upset about the FHA terms of the sale and made immediate attempts through their agent and later by personal correspondence to persuade plaintiff to cancel the agreement, but plaintiff declined to do so. This litigation followed.

■ In resisting specific performance of the agreement, defendants contended that they acted under the mistaken impression that the listing in the multiple listing service, though assertedly contrary to their instructions, obliged them to agree to an FHA-financed sale. They also accused plaintiff's agent of sharp practice and overreaching in several particulars which, they contended, would make it inequitable to enforce the agreement. The trial court, in an opinion announced from the bench, exonerated plaintiff's agent of any wrongdoing or misrepresentation. He accepted defendants' testimony that they thought they were in some way obligated by the multiple listing. These factual issues rest on the credibility of the witnesses, and we adopt the determinations of the trial court. *See Fischl v. Aust,* 279 Or 181, 186, 566 P2d 518 (1977), and cases cited.

■ The question remains what effect defendants' misapprehension about the multiple listing has on the enforceability of the agreement. There is no indication that plaintiff or her agent knew or should have known of that misapprehension. *Cf. Int. Union Op. Eng. v. Central Nat. Life,* 268 Or 115, 118, 519 P2d 85 (1974); *Wershow v. McVeety Machinery,* 263 Or 97, 103, 500 P2d 696 (1972); *G. E. Supply Corp. v. Republic Cons. Corp.,* 201 Or 690, 693, 272 P2d 201 (1954). It does not mean, as the trial court concluded, that the parties did not reach a "meeting of the minds" on the terms of the agreement. The terms were renegotiated after defendants objected that their price had meant cash rather than FHA, and there is no dispute that they understood the revised agreement that was returned for plaintiff's acceptance. Thus the negotiations resulted

in a contract which defendants could not unilaterally rescind.

■  Since every piece of land, and especially a home, is in some sense unique, purchasers under a valid contract are normally entitled to specific performance. Equitable remedies, unlike legal judgments, involve an element of discretion, but they are not a matter of grace. *See Wittick v. Miles,* 274 Or 1, 6, 545 P2d 121 (1976); *County of Lincoln v. Fischer,* 216 Or 421, 436-441, 339 P2d 1084 (1959), and authorities there cited. We are not persuaded that such misapprehension, confusion, or vacillation and immediate change of mind as may have existed on the part of these sellers makes it inequitable to enforce their agreement. Their concern at the time was purely with the price, not with giving up the house; they were eager to sell for cash and reluctant only about the loss of "points." Although the evidence did not show the precise amount of the difference between a cash sale and the final terms, it appears to involve some hundreds of dollars. The buyer, on the other hand, was anxious to obtain that particular home and willing to meet defendants' objections part way to obtain it. Under the circumstances, we hold that there was no ground on which to deny her the remedy of specific performance, and we remand to the circuit court for entry of an appropriate decree.

Reversed and remanded.