## SOUTH BENTON
## EDUCATION ASSOCIATION,
*Respondent,*

*v.*

## MONROE UNION HIGH SCHOOL
## DISTRICT #1,
*Petitioner.*

## (UP-97-85; CA A39164)

732 P2d 58

Joe B. Richards, Eugene, argued the cause for petitioner. With him on the brief were Thomas M. Christ, Eugene, and Luvaas, Cobb, Richards & Fraser, P.C., Eugene.

Henry H. Drummonds, Portland, argued the cause for respondent. On the brief were Liana Colombo, Portland, Barbara J. Diamond, Portland, and Kulongoski, Durham, Drummonds & Colombo, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Monroe Union High School District #1 (District) seeks review of an Employment Relations Board (ERB) order finding that District had committed an unfair labor practice by refusing to sign an agreement reached through collective bargaining with the South Benton Education Association (Association), in violation of ORS 243.672(1)(h),[1] and ordering District to cease and desist from violating the statute and to make the members of the Association whole from losses they incurred because of the violation. District contends that there was no agreement between the parties and that, if there was an agreement, it cannot enter into a binding collective bargaining agreement before approval of the terms of the agreement by its board in a lawfully conducted meeting. We review the factual questions for substantial evidence. ORS 183.482(8)(c).[2] We affirm.

ERB found that a major point of difference between District and Association was medical and dental insurance. District wanted to choose the providers for both benefits. Association wanted the contract to allow it to choose the provider. After long negotiations, two of District's board members informed Shelton, its spokesperson, that District was willing to allow Association to choose the provider; but that District also wanted to give the insurance purchase money to Association and to leave it to Association to transact all business with the provider. Shelton stated that he believed that turning the insurance money over to Association would not be legally permissible. Thereafter, he drafted a proposal which provided that District would provide medical and dental insurance coverage for teachers and their dependents

---

[1] ORS 243.672(1) provides, in relevant part:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(h) Refuse to reduce an agreement, reached as a result of collective bargaining, to writing and to sign such contract."

[2] ORS 183.482(8)(c) provides:

"The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

in the amount of $150.50 per month and that payment would be made to the providers of Association's choice.

Association's negotiators requested additional funds. Before learning about District's decision on the request, Association called a meeting of its bargaining unit. The bargaining unit unanimously agreed to accept District's proposal. Association informed a District Board member that the bargaining unit voted to accept the proposal and offered to have Association's office prepare a copy of the contract for signature. The board member agreed and stated that District would pay $1 additional per month. A contract was prepared, which provided that District would make a contribution of $151.50 per teacher per month to the insurance provider of Association's choice. The contract was delivered to District to be signed. District refused to sign.

On the basis of the findings, ERB concluded that the parties had reached an agreement and that District had committed an unfair labor practice in refusing to reduce the agreement to writing. It ordered District to do so. ERB also ordered District to make whole members of Association who incurred losses because of its refusal to reduce the agreement to writing.[3]

■ District's first and second assignments of error deal with whether an agreement was ever formed. It argues that no agreement was reached and that, because the proposal made by Shelton, the spokesperson for District's negotiators, contained a mistake and Association was aware of that mistake, Association could not validly accept the offer. Association argues that ERB correctly concluded that an agreement was reached and that there is substantial evidence to support ERB's conclusions that Association was not aware of a mistake and that, under the objective theory of contracts, there was a "meeting of the minds" between the parties. We agree that there was substantial evidence to support the findings.[4]

---

[3] ERB's Agent Lamb had concluded that these facts did not amount to an unfair labor practice in violation of ORS 243.652(1)(h). He found that Association had not shown, by a preponderance of the evidence, that District ever gave objective indications that an agreement had been reached.

[4] District argues that there is evidence that representatives of Association knew that there had been a mistake. However, ERB found otherwise, and there is substantial evidence to support that finding. District argues that it should be able to

District next contends that ERB erred in concluding that District's failure to reduce the agreement to writing amounted to an unfair labor practice in violation of ORS 243.672(1)(h). It argues that it could not enter into a legally enforceable agreement with Association without prior approval of the terms of the agreement by the school board at a lawfully conducted public meeting. Association argues that District was entitled to negotiate the terms of the agreement outside of public sessions, that an authorized agent may bind District and that District may still comply with the Public Meetings Law, ORS 192.610 to ORS 192.660, by ratifying the agreement at a public meeting. ERB concluded:

> "We agree that Oregon statutes may require formal approval at a public meeting of a contract before a school board may implement the terms of the contract. We further conclude, however, that designated representatives of a school board — that is, those persons authorized to act as agents in collective bargaining on behalf of the school board — may, as a result of collective bargaining, reach an agreement with a labor organization that is enforceable by that Board, even though the agreement has not been formally ratified. The settlement proposal of May 3 was not conditioned on ratification by the full School Board. It is not disputed that the District's designated representative had the authority to make and accept proposals in bargaining. No provision of the PECBA [Public Employes Collective Bargaining Act, ORS 243.650 to ORS 243.782] requires that collective bargaining agreements be ratified by the negotiators' constituents before they are enforceable." (Footnote omitted.)

ORS 332.255 provides:

> "All contracts must be approved by the district school board before an order can be drawn for payment. If a contract

---

avoid the agreement, citing *Gardner v. Meiling,* 280 Or 665, 674, 572 P2d 1012 (1977), and *G.E. Supply Corp. v. Republic Cons. Corp.,* 201 Or 690, 693, 272 P2d 201 (1954). However, those cases state that rescission of a contract may be based on a unilateral mistake when "that mistake is basic [to the contract] and known to the other party, or that circumstances are such that the other party, as a reasonable person, should have known of the mistake." *Gardner v. Meiling, supra,* 280 Or at 674. There is no evidence that Association's members, as reasonable persons, should have known that the insurance portion of the agreement was a mistake. The agreement was the result of a long and complicated bargaining process, and the insurance clause was one of many issues about which the parties could not agree for some time. Association was not unreasonable in viewing the "concession" by District to allow Association to select the insurance provider as something that it could reasonably expect as a result of bargaining.

is made without the authority of the district school board, the individual making such contract shall be personally liable."

ORS 332.057 provides:

"Any duty imposed on the district school board as a body must be performed at a regular or special meeting and must be made a matter of record. The consent to any particular measure obtained of individual members when the board is not in session is not an act of the board and is not binding on the district."

Those two statutes appear to require school board approval of the collective bargaining agreement before it is enforceable. However, ORS 243.672(1)(h) makes it an unfair labor practice to refuse to reduce an agreement previously reached by collective bargaining to writing and to sign that agreement. In addition,

"[i]t has been held that collective bargaining agreements are not 'ordinary contracts' and are not 'governed by the same old common law concepts which control such private contracts,' but are 'unique in character and are a field unto themselves.' " *Pio v Kelly,* 275 Or 585, 593, 552 P2d 1301 (1976), quoting *United Packinghouse Workers v. Maurer-Nearer, Inc.,* 272 F2d 647, 649 (10th Cir 1959), *cert den* 362 US 904 (1960). (Footnotes omitted.)

■    We have also recognized that collective bargaining agreements arise out of a special relationship and are based on policies that differ from those in a standard contract relationship. *See Corvallis School District 5095 v. Corvallis E.A.,* 35 Or App 531, 581 P2d 972 (1978). ORS 332.255 applies to the formation of contracts and requires a special procedure for acceptance of such contracts. It was intended to apply to contracts for the purchase of goods and services by a school district. Collective bargaining is a unique process and requires different tools for creating and enforcing agreements reached through the process. PECBA establishes those unique procedures. We conclude that ORS 243.762(1)(h) controls over the more general statutes, ORS 332.255 and ORS 332.057, and that those two statutes do not prevent a collective bargaining agreement from being enforceable against District, when the board gives its negotiators sufficient authority, simply

because the school board has not yet ratified the agreement.[5]

■        District also argues that the Public Meetings Law prevents the contract from being enforceable. ORS 192.360(1) provides:

> "All meetings of the governing body of a public body shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by ORS 192.610 to 192.690."

ORS 192.660(1)(d) provides that an executive session may be held:

> "To conduct deliberations with persons designated by the governing body to carry on negotiations."

However, ORS 192.660(4) provides:

> "No executive session may be held for the purpose of taking any final action or making any final decision."

Under the statute law, District could hold executive sessions with Shelton to discuss the negotiations with Association and to determine what District was willing to offer or accept in the bargaining process. District argues, however, that no offer made as a result of the executive session meetings could be binding on District without ratification at a public meeting, relying on ORS 192.630 and ORS 192.660(4). Association argues that ORS 243.672(1)(h) requires that the offers made by the negotiator as a result of executive sessions be binding and that agreements be reduced to writing and signed by District. Association also argues that District can still comply with ORS 192.630 by ratifying the agreement at a public meeting after proper notice. We agree with Association.

■■        The statutes in question appear to be in conflict. As noted above, when statutes covering the same topic are in conflict, the statute covering the specific usually governs over the statute covering the general. *See* note 5, *supra.* In this case, PECBA is specific, and the Public Meeting Law is general. Therefore, ORS 192.630 does not prevent a collective bargaining agreement previously reached through negotiations from

---

[5] A specific statute usually controls over a general statute. *Davis v. Wasco IED,* 286 Or 261, 272, 593 P2d 1152 (1979); *Thompson v. IDS Life Insurance Co.,* 274 Or 649, 656, 549 P2d 510 (1976); *State v. Warner,* 52 Or App 987, 992, 630 P2d 385, *rev den* 291 Or 662 (1981).

being enforceable against District. ERB did not err in concluding that District committed an unfair labor practice in refusing to reduce its agreement with Association to writing and to sign the agreement.

Affirmed.