OREGON ASSOCIATION OF
CLASSIFIED EMPLOYEES et al,
*Appellants,*

*and*

TROTT,
*Plaintiff,*

*v.*

SALEM-KEIZER SCHOOL DISTRICT 24J,
*Respondent.*

(87C-11778; CA A47143)

767 P2d 1365

Henry H. Drummonds, Portland, argued the cause for appellants. With him on the briefs were Margaret Olney, and Durham, Drummonds, Smith & Wiser, Portland.

Mark B. Comstock, Salem, argued the cause for respondent. With him on the brief was Garrett, Seideman, Hemann, Robertson & De Muniz, P.C., Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

■    Plaintiff association[1] is a labor organization that seeks to become the bargaining representative of the classified employes of defendant school district and has petitioned ERB to hold a representation election. Earlier on the same day that the association filed the petition, the district board voted at an emergency meeting, *see* ORS 192.640(3), to approve a new collective bargaining agreement with OSEA, the incumbent certified representative of the employes. That decision and the resulting formalization of the agreement may have the effect of precluding a representation election now or in the proximate future on the ground that an existing contract bars a petition for election.[2] *See* ORS 243.692(3); OAR 115-25-015. Plaintiffs contend that district's decision to approve the agreement was made in violation of the Public Meetings Law, ORS 192.610 to ORS 192.695, and they ask that the decision be voided or that other equitable relief be given.[3] ORS 192.680. The trial court ruled that an "actual emergency" existed and that there was therefore no violation of the statute. Plaintiffs appeal. We review *de novo,* ORS 192.680(1), and reverse.

The board's deliberations on the proposed agreement were originally scheduled, and the required notice was given, for a meeting on October 8, 1987, at noon. Association had targeted its preparations for filing a representation petition around that schedule and did file the petition shortly before noon. However, sometime between October 2 and October 7, district personnel learned that there were serious problems with its budget and tax levy, which required action by the board and notification to the Marion County Assessor by 2 p.m. on October 8. Consequently, the agenda for the noon meeting was changed, and the budgetary problems rather than the OSEA agreement were to be considered at that time. A special meeting of the board was called for 7:30 a.m. on October 8 to deal with the agreement. District treated the early morning meeting as an emergency, subject to ORS

---

[1] The individual plaintiffs are affiliated with association in ways which make their position in the litigation indistinguishable from its.

[2] Whether it has that effect is not before us at this time.

[3] Plaintiffs also sought injunctive relief, and the case was heard on the merits in conjunction with the hearing on their motion for a preliminary injunction. ORCP 79C(2).

192.640(3), and did not provide plaintiffs or others a 24-hour advance notice or the kinds of notice that would be required if no emergency existed. The agreement between district and OSEA was approved at about 8:15 a.m. The budgetary matter was considered at the noon meeting.[4]

ORS 192.640(3) provides:

"No special meeting shall be held without at least 24 hours' notice to the members of the governing body, the news media which have requested notice and the general public. In case of an actual emergency, a meeting may be held upon such notice as is appropriate to the circumstances, but the minutes for such a meeting shall describe the emergency justifying less than 24 hours' notice."

No one questions that the budget and levy problems constituted an "actual emergency" within the meaning of ORS 192.640(3). However, as plaintiffs repeatedly point out, the threshold question here is whether there was an actual emergency justifying the meeting to approve the agreement. They maintain that there was not and that, rather than advancing the previously scheduled time for considering the agreement, district was required to call a later meeting after giving appropriate notice.

In its brief, district offers four reasons why there was an actual emergency: (1) There was an "intervening emergency on another subject preempting the previously noticed meeting time"; (2) failure to act promptly on the agreement, after OSEA's membership had approved it, might have led to an unfair labor practice complaint by OSEA; (3) payroll adjustments had to be made to provide benefits under the new agreement before employes would be paid on October 30; and (4) the meetings had to be planned to accommodate the schedule of the elected, privately employed board members[5] and the availability of district staff. We conclude that none of those

---

[4] Both the 7:30 a.m. and the noon meetings were to be executive sessions, followed by open meetings at which formal action would be taken. *See* ORS 192.660(4). The board was also scheduled to meet again at 4:30 p.m., in executive session, to evaluate the superintendent. In addition, a regular board meeting was scheduled for October 13. For the purposes of this opinion, it is unnecessary to differentiate between the two stages of the October 8 meetings.

[5] Plaintiffs argue that the only basis for the emergency stated in the minutes, pursuant to ORS 192.640(3), was the board members' work schedules and that that is therefore the only proffered justification that we may consider.

reasons establishes an "actual emergency" or justifies the truncated procedures.

District's first reason is circular. There was an actual emergency concerning the budget and levy problems, and emergency procedures were permissible with respect to them. That fact might, at the most, have created a scheduling problem; however, it did not convert the contract approval deliberations into an emergency. District's contrary argument would foster a domino effect; one actual emergency could be used to justify a public body's emergency treatment of all business coming before it at approximately the same time. Assuming that it was necessary to consider the budget problem at the noon meeting, that does not establish a corresponding necessity to consider the contract at an earlier special meeting without complying with statutory notice requirements.

The second proffered justification also fails. The apparent basis for district's concern about a possible unfair labor practice complaint was that its negotiators had promised OSEA that it would present the agreement to the board as soon as possible after the employes had ratified it and had given notice on October 2 that the noon meeting would be held on October 8 to consider the agreement.[6] *See* ORS 243.672(1)(e) and (h). However, nothing in the evidence supports the premise that the negotiators agreed—assuming that they could—that the board's consideration of or action on the agreement would take place at a meeting that did not comply with the Public Meetings Law.

We held in *South Benton Ed. Assn. v. Monroe Union High,* 83 Or App 425, 732 P2d 58, *rev den* 303 Or 331 (1987), that a school district could be bound under PECBA to a negotiated collective bargaining agreement, although its board had not approved the agreement in a public session pursuant to ORS 192.660(4). We explained:

"District could hold executive sessions with [its negotiator] to discuss the negotiations with Association and to determine what District was willing to offer or accept in the bargaining process. District argues, however, that no offer made as a result of the executive session meetings could be binding on

_____

[6] The OSEA bargaining unit approved the contract in the late afternoon or early evening of October 7, less than 24 hours before the noon meeting.

District without ratification at a public meeting, relying on ORS 192.630 and ORS 192.660(4). Association argues that ORS 243.672(1)(h) requires that the offers made by the negotiator as a result of executive sessions be binding and that agreements be reduced to writing and signed by District. Association also argues that District can still comply with ORS 192.630 by ratifying the agreement at a public meeting after proper notice. We agree with Association.

"The statutes in question appear to be in conflict. As noted above, when statutes covering the same topic are in conflict, the statute covering the specific usually governs over the statute covering the general. * * * In this case, PECBA is specific, and the Public Meeting Law is general. Therefore, ORS 192.630 does not prevent a collective bargaining agreement previously reached through negotiations from being enforceable against District." 83 Or App at 431.

*South Benton* does not hold, however, that the district was not required to act on the agreement in accordance with the Public Meetings Law and thereby obey both laws.

Moreover, this case is distinguishable. Unlike the situation in *South Benton,* there was no understanding here on the part of the board, district's negotiator or OSEA that the terms of agreement were finalized or agreed to by the board through instructions to its negotiators or other preliminary events, or that its ultimate approval of the agreement would be a mere *pro forma* action. The posture of the agreement and of the ancillary understandings of the negotiators did not excuse district from complying with the Public Meetings Law and did not create an "actual emergency."[7]

District's argument based on the need to make payroll adjustments is not persuasive. The adjustments necessary to meet the October 30 payment schedule could have been accomplished if the agreement were approved by October 15, even assuming that contingency planning could not have been undertaken before approval. A regular meeting was scheduled for October 13.

District's final basis for saying that an actual emergency existed is that the "availability of staff" and the work schedules of the uncompensated board members required the

---

[7] We do not comment on the merits of any unfair labor practice issue.

special meeting time. There was evidence, if any were needed, that district could have the necessary staff present at a later meeting as readily as it could direct the staff to be in attendance at the early morning meeting on October 8. The work schedules of the board members also provide no justification for an emergency meeting. Although we are cognizant of and respect the public service that persons like the district's board members provide, their personal schedules are not a ground for treating their meetings as emergencies. An actual emergency, within the contemplation of the statute, must be dictated by events and cannot be predicated solely on the convenience or inconvenience of members of the governing body. As plaintiffs contend, the exception would devour the rule if emergency meetings were allowable on that basis.

The specific answers to each of district's rationales for the emergency meeting aside, the problem that cuts across all of them is that district has offered no persuasive reason why the contract could not have been considered at a meeting for which there was proper notice. The scheduled October 13 meeting was an alternative and, for that matter, it is not wholly clear why the contract as well as the budget problem could not have been acted on at the noon meeting originally scheduled for the former.

■ District also contends that, because plaintiffs sought an injunction under ORCP 79, they should be held to the exacting showings and standard of proof which apply to a party that seeks injunctive relief. We disagree. ORS 192.680(3) provides that "this section shall be the exclusive remedy for an alleged violation of ORS 192.610 to 192.690." ORS 192.680(1) provides:

> "Any person affected by a decision of a governing body of a public body may commence a suit in the circuit court for the county in which the governing body ordinarily meets, for the purpose of requiring compliance with, or the prevention of violations of ORS 192.610 to 192.690, by members of the governing body, or to determine the applicability of ORS 192.610 to 192.690 to matters or decisions of the governing body. The court may order such equitable relief as it deems appropriate in the circumstances. A decision shall not be voided if other equitable relief is available. The court may order payment to a successful plaintiff in a suit brought under this section of reasonable attorney fees at trial or on appeal, by

the governing body, or public body of which it is a part or to which it reports."

Injunctive relief is among the remedies that ORS 192.680(1) encompasses. ORS 192.695 provides:

"In any suit commenced under ORS 192.680(1), the plaintiff shall be required to present prima facie evidence of a violation of ORS 192.610 to 192.690 before the governing body shall be required to prove that its acts in deliberating toward a decision complied with the law. When a plaintiff presents prima facie evidence of a violation of the open meetings law, the burden to prove that the provisions of ORS 192.610 to 192.690 were complied with shall be on the governing body."

Plaintiffs presented a *prima facie* case. The burden was on district to show that there was no violation.

District relies on *School District No. 17 v. Powell,* 203 Or 168, 279 P2d 492 (1955), and argues:

"[A]s the trial court was reviewing and this court is reviewing the actions of the District School Board in the administration of its affairs; such actions may be overturned only for abuse of discretion."

Plaintiffs answer:

"The plaintiffs in [*Powell*] challenged, among other things, the school board's determination that the district needed a new high school. The court held that where the legislature gives the school board the authority to determine policy, the court may only review such policy decisions for abuse of discretion. The District inappropriately applies the *Powell* standard to this case, arguing that '[a]s long as the actions are taken by the public body after proper notice, the body should not be subject to reversal of its administrative decisions.' First, this statement begs the question. At issue is whether the District acted after proper notice, yet that is the very proposition assumed by the District in the above-quoted statement. Second, the statement reveals District's basic misunderstanding of the Open Meetings law. That statute expressly *limits* the public body's ability to make decisions without public notice and participation. It is not a grant of authority, as was the statute in the *Powell* case. It would make no sense to allow the same public body whose actions are limited by the statute to effectively have the final say on whether those limitations should apply to it * * *." (Emphasis plaintiffs'.)

We agree with plaintiffs. No actual emergency existed, and district violated the Public Meetings Law.

Plaintiffs devoted attention in their written and oral arguments to the issue of the appropriate remedy. Because the trial court concluded that there was no violation, it did not reach that issue, and we remand for it to do so. We note, however, that much of what plaintiffs say appears to presuppose that the thing to be rectified is the status of association's representation petition, rather than the approval of the OSEA agreement at a meeting for which inadequate notice was given. That presupposition is incorrect. Any relief to which plaintiffs may be entitled in connection with the petition must be pursued before ERB.[8] The remedy which the trial court fashions may or may not have an ancillary effect on the status of the OSEA contract and on association's petition, but that is not the purpose of any remedy to be given here.

Reversed and remanded.

---

[8] An ERB proceeding was pending at the time of the argument in this case.