Argued and submitted November 26, 1980, affirmed January 26,
reconsideration denied March 12,
petition for review allowed May 5, 1981

KING CITY REALTY, INC.,
*Respondent,*

*v.*

SUNPACE CORPORATION,
*Appellant.*

(No. A7812-19657, CA 17276)

622 P2d 1122

Charles S. Tauman, Portland, argued the cause for appellant. With him on the briefs were Gregory A. Hartman and Willner, Bennett, Bobbitt & Hartman, Portland.

Steven K. Blackhurst, Portland, argued the cause for respondent. With him on the brief was Lindsay, Hart, Neil & Weigler, Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

The defendant in this contract action appeals from a verdict and judgment awarding liquidated damages to plaintiff. Defendant contends that the trial court erred by striking an affirmative defense that the contract was an illegal tying agreement and therefore unenforceable.

According to the amended complaint:

"[P]laintiff and Tualatin Development Co., Inc. [of which plaintiff is a wholly-owned subsidiary] and defendant entered into an agreement whereby they sold defendant various building lots. As part of the consideration of the agreement, defendant agreed to exclusively list for sale with plaintiff the houses built on the lots."

Defendant breached the contract by offering four of the lots for resale without complying with the exclusive listing requirement, and plaintiff brought this action under the paragraph of the contract providing for plaintiff's recovery of $3,000 liquidated damages per lot in the event of such a breach.

Defendant's answer included an affirmative defense, alleging, so far as material:

"II

"The exclusive selling agreement which plaintiff alleges was entered into between Tualatin Development Co. and defendant, attached to plaintiff's amended complaint as Exhibit 'A,' is a list back agreement. Under said agreement, as part of the bargain and sale for the property, Tualatin Development Co. required defendant to employ the plaintiff, then the real estate broker, as selling agent if and when the property defendant was purchasing from plaintiff was resold.

"III

"Plaintiff is in the regular business of selling real estate in Oregon, and Tualatin Development Co. is in the regular business of selling developed and undeveloped property. Said business constitutes trade and commerce within the meaning of ORS 646.705.

"IV

"Tualatin Development Co. has a strong position in the market for residential lots because at the time of the contract, they controlled a substantial number of lots of those available, and because some of their lots are of a unique quality.

"V

"The list back agreement which Tualatin Development Co. required defendant to enter into as part of the transaction for the sale of real estate was a tie-in agreement, and as such is a contract in unreasonable restraint of trade and commerce, in violation of ORS 646.725.

"* * * * *."

The threshold issue is whether defendant has designated an adequate record to enable us to determine whether the striking of that affirmative defense was reversible error. As the parties have explained the trial court proceedings to us, plaintiff moved to strike the defense early in the trial or before the trial commenced. However, the court did not rule on the motion until defendant had put on its case. Hence, defendant had a full opportunity to prove the defense before it was stricken.[1]

■        Defendant's only assignment of error challenges the granting of the motion to strike. Defendant has designated no record on appeal other than the trial court file, because defendant considers the pleadings alone to be relevant to our consideration of the correctness of the trial court's ruling on that motion. Plaintiff disagrees, arguing that the trial court's judgment should be affirmed without the merits being reached because the record defendant has designated is inadequate. The parties appear to agree that the basis for the trial court's ruling was that, as a matter of law, the allegation that the contract violated the antitrust statutes could not constitute a defense to this contract action. *See Kelly v. Kosuga,* 358 US 516, 79 S Ct 429, 3 L Ed 2d 475, *reh den* 359 US 962 (1959); *Viacom Intern. Inc. v. Tandem Productions, Inc.,* 526 F2d 593 (2d Cir 1975).[2] Plaintiff reasons that, even if the striking of the defense on that basis was error, we cannot determine whether defendant presented enough evidence on the illegality issue to go

---

[1] The trial court file contains a written order striking the defense, which was entered nine days after the jury's verdict.

[2] The cited cases, and others on which plaintiff relies, enunciate a policy of the federal courts that an alleged violation of the federal antitrust laws is not a cognizable defense to a contract action brought by the alleged violator *unless* the specific act the plaintiff seeks to enforce is "the precise conduct made unlawful by the Act." *Kelly v. Kosuga,* 358 US 516, 520, 79 S Ct 429, 3 L Ed 2d 475, *reh den* 359 US 962 (1959). The federal decisions hold that, when the performance which is the subject of suit is "collateral" to an illegal transaction, the defense is not available.

to the jury, and we therefore cannot determine whether any error inhering in the striking of the defense was prejudicial.[3]

There are defects in both parties' contentions, but those of defendant strike us as being more defective than those of plaintiff. It is not correct, at least since *Elam v. Soares,* 282 Or 93, 577 P2d 1336 (1978), that an appellant must "prove" prejudice as well as error, as long as the record the appellant does designate is sufficient to show error. On the other hand, we do not share the understanding which defendant appears to have that *Elam* invites appellants to conceal the harmless nature of an error by failing to designate an adequate record. The question here, however, is not only whether the error defendant contends occurred was prejudicial, but also whether we can determine from the very limited record before us that an error did occur.

If plaintiff had moved for a directed verdict on the affirmative defense at the conclusion of defendant's case, defendant clearly could not obtain appellate review of the granting of that motion without designating a record sufficient to show that there was sufficient evidence to prove the defense. The fact that the trial court may have been motivated to direct a verdict because of its belief that the defense failed as a matter of law rather than as a matter of proof would not relieve the defendant from covering both bases in its presentation on appeal; axiomatically, a ruling which is right for the wrong reasons is affirmable.[4]

---

[3] The parties made essentially the same arguments in connection with plaintiff's motion to dismiss the appeal because of the insufficiency of the record. We denied that motion, and defendant contends that, by raising the issue again at this time, plaintiff is seeking a second bite at the same apple. However, we do not think the apple being bitten is the same one. The inadequacy of a record on appeal can seldom be a basis for dismissing an appeal. But it can be a basis for affirming a judgment, where the appellant fails to provide the reviewing court with a sufficient portion of the proceedings below to establish whether error was committed.

[4] We note that the trial court file contains a requested jury instruction by defendant, the substance of which is that if the jury found certain facts germane to the illegality defense to be true, it was to find for defendant. If that requested instruction was not given, as seems highly probable, defendant could, of course, have assigned error to the court's refusal to give the instruction. Had such an assignment of error been made, the same legal issues defendant now raises would be before us, and, as in the case of a directed verdict, the issue of whether there

■ We recognize that defendant may not be charged with plaintiff's failure to move for a directed verdict (if, in fact, it did not do so). The question remains, however, whether the scope of our inquiry should be more limited in reviewing the striking of a defense than it would be in reviewing the directing of a verdict on the defense when, as here, the alternative actions occur at a stage of the proceedings which makes the ruling on either of them functionally identical. We conclude that the scope should be the same. The parties inform us that the trial of this case consumed four days. Judicial economy would be unacceptably disserved by our remanding this case for a second trial if we cannot ascertain from the record before us whether defendant failed at the first trial to prove what it seeks a second opportunity to prove.

It follows that defendant may prevail on this appeal and on this record only if we can determine from the pleadings and from the face of the contract on which plaintiff sues that the contract is *necessarily* illegal, and, if so, that its illegality constitutes a cognizable defense to the action. In other words, defendant is entitled to prevail only if its position is correct as a matter of law, and if the demonstration of the correctness of its position is not dependent on *any* evidentiary showing.

■ We assume that if the tying arrangement alleged is illegal, defendant may assert its illegality as a defense because this action is brought to enforce that arrangement. *(See* n 2, *supra.)* However, in our view, the legality or illegality of the contract is a question of fact as well as law. In *Butler Enterprises v. VanLandingham,* 264 Or 414, 505 P2d 1149 (1973), the Supreme Court delineated the elements which must be proved to establish a tying agreement proscribed by the Sherman Act.[5] These are:

was sufficient evidence would also be here. However, the absence of a more complete record makes it impossible for us to know whether the instruction was in fact refused. We note, however, that we are unsympathetic to any practice by appellants of tailoring assignments of error to minimize the portion of the proceedings which can be considered on appeal and to maximize the possibility of reversal for inconsequential error.

[5] Defendant predicates its defense on ORS 646.725, the Oregon analog to Section 1 of the Sherman Act (15 USCA § 1).

"(1) that the scheme in question involves two distinct items and provides that one (the tying product) may not be obtained unless the other (the tied product) is also purchased; (2) that the tying product possesses sufficient economic power appreciably to restrain competition in the tied product market; and (3) that a 'not insubstantial' amount of commerce is affected by the arrangement. * * *." 264 Or at 425.

It is not clear that all of these factual elements are relevant in a context where real property, rather than products or commodities, are involved. (Some of the elements also are of questionable relevance to the Oregon antitrust statutory scheme, as distinguished from the federal one.) It is clear, however, from the briefs and oral arguments that there was a question of fact at least as to whether plaintiff and its parent corporation agreed to forego commissions which they would normally have charged on the original sale to defendant, with the list back arrangement serving as a form of deferred consideration. There is also a question of fact as to whether plaintiff as well as its parent company, Tualatin Development Co., was involved in any illegal tying arrangement which might have been consummated. *See Viacom Intern. Inc. v. Tandem Productions, Inc., supra.*

In short, the defense could not be established without an evidentiary showing, and defendant has provided us with no record to indicate whether such a showing was made. Accordingly, we are unable to determine if there was error justifying reversal.

Affirmed.