Argued and submitted June 2, reversed and remanded September 16, 1981

# KING CITY REALTY, INC.,
dba Prestige Properties,
*Respondent,*
*v.*
# SUNPACE CORPORATION,
*Petitioner.*

(NO. A7812-19657, CA 17276, SC 27654)

633 P2d 784

Charles S. Tauman, Portland, argued the cause for petitioner. With him on the briefs were Gregory A. Hartman, and Willner, Bennett, Bobbit & Hartman, Portland.

Steven K. Blackhurst, Portland, argued the cause for respondent. With him on the briefs was Lindsay, Hart, Neil & Weigler, Portland.

TONGUE, J.

## TONGUE, J.

This is an action for damages for breach of a land sale contract. The contract provided not only that defendant would purchase seven lots at $15,000 each, for a total of $105,000, but included a "list back" agreement under which defendant agreed to list exclusively with plaintiff realty company for resale the lots purchased by defendant under the agreement after construction of houses on such lots.

Plaintiff's complaint alleged that defendant breached the agreement by refusing to allow plaintiff to sell four of the lots and by listing them with another real estate broker. Defendant's answer alleged as an affirmative defense that the list-back agreement was a "tying agreement" and, as such, was an illegal contract in restraint of trade and commerce under ORS 646.725.

Before the beginning of the trial on February 27, 1980, plaintiff filed a motion to strike that affirmative defense on the ground that such a defense of antitrust illegality cannot be pleaded as an affirmative defense in an action for breach of contract. The case then proceeded to trial, resulting in a verdict and judgment in favor of plaintiff in the sum of $12,000 in liquidated damages plus attorney fees and costs. After completion of the trial, the trial court entered an order granting plaintiff's motion to strike. The following notation, however, appears in the trial court file:
"1st Affirmative Defense stricken 2/29/80. R.L. Unis, Judge."
It also appears from that file that the trial commenced on February 27, 1980, and was continued on February 28 and 29, 1980, and again on March 3, 1980.

Defendant appealed to the Court of Appeals, assigning as error the order granting plaintiff's motion to strike defendant's affirmative defense of illegality. Defendant's designation of record on appeal did not include any portion of the proceedings and exhibits other than the trial court file. Plaintiff moved to dismiss defendant's appeal for the reason that defendant had failed to designate any portion of the trial court transcript in its designation of

record, thus "making it impossible for this court [the Court of Appeals] to consider fully the merits of this appeal." Alternatively, plaintiff asked that defendant be directed to supplement the designation of record and to produce the relevant portions of the transcript. Those motions were denied.

After briefs and oral argument, the Court of Appeals affirmed the judgment for plaintiff, holding that the defense of illegality "could not be established without an evidentiary showing," that "defendant has provided us with no record to indicate whether such a showing was made", and that "[a]ccordingly, we are unable to determine if there was error justifying reversal."

Defendant then filed in this court a petition for review of that decision upon the ground that although the burden was on the defendant, as appellant, to demonstrate error, it was the burden of the plaintiff, as respondent, to demonstrate that any such error was not prejudicial and to designate such portions of the record as necessary for that purpose. We allowed that petition for review to consider whether, in such a case, it was necessary to designate additional portions of the record in order to make possible a determination whether the trial court erred in granting plaintiff's motion to strike and whether any such error was prejudicial, and, if so, whether the burden was upon the plaintiff or the defendant to designate such additional portions of the record.

Before considering these questions, however, it is first necessary to consider the preliminary question whether the pleading of such a "tying agreement" is proper as an affirmative defense in an action such as this and, if so, whether such an affirmative defense, as pleaded by this defendant, sufficiently alleged all of the elements necessary to demonstrate such an illegal "tying agreement," if supported by proof. In other words, it is otherwise unnecessary for this court to consider whether plaintiff or defendant had the burden to supplement the record by including reference to evidence which would prove or disprove the existence of such an illegal agreement.

1. *An illegal "tying agreement" was properly pleaded as a defense in this case.*

In *Butler Enterprises v. Vanlandingham,* 264 Or 414, 424, 505 P2d 1149 (1973), this court expressly held (at 424) that:

"In addition to the remedies available in the federal courts, a defendant in an action on a contract filed against him in a state court may raise the defense that the contract violates the federal antitrust laws. [citing cases]."

and that this includes "tying agreements" which may be illegal and which were described (at 424) as follows:

"A tying arrangement is defined as an agreement by a party to sell one product but only on the condition that the buyer also purchase a different or 'tied' product, or at least agree that he will not purchase that product from any other supplier. [citing cases]."

It is true, as noted by plaintiff, that *Butler* did not involve an alleged violation of ORS 646.725, which had not then been enacted, but instead involved an alleged violation of the federal antitrust statutes. We can see no reason, however, why the same rule should not apply to permit illegal "tying agreements" to be alleged as affirmative defenses under ORS 646.725, a statute which embodies essentially the same requirements as provided under Section 1 of the Sherman Antitrust Act (15 USC § 1).

Plaintiff also contends that *Butler* "is not necessarily inconsistent with *Kelly v. Kosuga,*" 358 US 516, 79 S Ct 429, 3 LEd 2d 475 (1959), upon which plaintiff relies in support of its contention that antitrust violations cannot properly be pleaded as a defense in an action for breach of contract. In *Kelly,* however, the Court expressly recognized (at 520-21) that when the enforcement of a contract would necessarily result in an enforcement by the court of "the precise conduct made unlawful by the Act * * *," such a defense can properly be pleaded. This case falls within that rule because plaintiff, in demanding damages for defendant's failure to list exclusively with plaintiff the lots for sale, would require the court to enforce the tying agreement which defendant contends to be illegal as in violation of ORS 646.725.

We have also considered decisions by federal circuit and district courts cited by plaintiff, including *Viacom International, Inc. v. Tandem Productions, Inc.,* 526 F2d

593 (2nd Cir 1975). None of such cases is directly in point, however, and we do not believe that their reasoning is controlling in this case.

2. *The affirmative defense sufficiently pleaded the elements of an illegal tying agreement.*

As previously stated, it was held by this court in *Butler Enterprises v. Vanlandingham, supra,* at 424, that:

"A tying arrangement is defined as an agreement by a party to sell one product but only on the condition that the buyer also purchase a different or 'tied' product, or at least agree that he will not purchase that product from any other supplier."

This court went on in *Butler* to hold (at 425) that:

"In order to establish that the tying arrangement is unlawful, the defendant must show: (1) that the scheme in question involves two distinct items and provides that one (the tying product) may not be obtained unless the other (the tied product) is also purchased; (2) that the tying product possesses sufficient economic power appreciably to restrain competition in the tied product market; and (3) that a 'not insubstantial' amount of commerce is affected by the arrangement."

This is in accord with decisions by the Supreme Court of the United States under federal antitrust statutes. *See Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 US 495, 498-99, 89 S Ct 1252, 22 LEd 2d 495 (1969); *Northern Pacific Railway Co. v. U.S.,* 356 US 1, 5-6, 78 S Ct 514, 2 LEd 2d 545 (1958). *See also International Salt Company v. U.S.,* 332 US 392, 396, 68 S Ct 12, 92 LEd 20 (1947).

Plaintiff contends that there are two additional "elements" which must be pleaded and proved to establish such a defense: (1) "evidence of actual coercion by the seller that in fact forced the buyer to accept the tied product" and (2) "anticompetitive effects in the tied market," citing *Yentsch v. Texaco, Inc.,* 630 F2d 46 (2nd Cir 1980).

It is of significance to note that neither this court in *Butler* nor the Supreme Court of the United States in *Fortner* or *Northern Pacific* list these two additional "elements" of required pleading and proof, but instead list only the three requirements previously referred to.

■ With respect to the contention that coercion must be pleaded and proved as a separate "element," we have reviewed *Capital Temporaries, Inc. of Hartford v. Olsten Corp.*, 506 F2d 658 (2nd Cir 1974), relied upon in *Yentsch v. Texaco, Inc.*, and find that it is more accurate to conclude that the court in *Capital Temporaries, Inc.* held, in effect, that coercion is not a separate "element," but is included in the required "element" that "the tying product possesses sufficient economic power appreciably to restrain competition in the tied product market," with the result that although coercion of the buyer to purchase the tied product is a fact which must be established in *proving* at trial the existence of an illegal tying agreement, coercion need not be *pleaded* as an "element" in addition to the three outlined in *Butler Enterprises v. Vanlandingham, supra,* in order to sufficiently allege an illegal "tying agreement."

■ In any event, it would appear that any requirement of coercion was satisfied by defendant's pleading in this case. As held in *Moore v. Jas. H. Matthews & Co.*, 550 F2d 1207, 1217 (9th Cir 1977):

"Coercion occurs when the buyer must accept the tied item and forego possibly desirable substitutes."

Defendant pleaded in the case that under the terms of the list back agreement between the parties plaintiff "required defendant to employ the plaintiff, then the real estate broker, as the selling agent if and when the property defendant was purchasing from the plaintiff was resold." In our opinion, this satisfied any requirement of coercion.

■ As for a required "element" of "anticompetitive effects in the tied market," it was held by the United States Supreme Court in *Northern Pacific, supra,* at 6, that:

"Where [tying] conditions are successfully exacted competition on the merits with respect to the tied product is inevitably curbed."

With respect to the three requirements as stated by this court in *Butler* and by the Supreme Court of the United States in *Fortner* and *Northern Pacific,* it is significant to note that plaintiff does not challenge the sufficiency of defendant's pleading of the first and third of such requirements, namely, "(1) that the scheme in question involves two distinct items and provides that one (tying product)

may not be obtained unless the other (the tied product) is also purchased," and "(3) that a 'not insubstantial' amount of commerce is affected by the arrangement." Instead, plaintiff challenges only the sufficiency of defendant's pleading with respect to the second requirement, namely, "(2) that the tying product possesses sufficient economic power appreciably to restrain competition in the tied product market."

The Supreme Court of the United States in *Fortner Enterprises v. U.S. Steel,* 394 US 495, 502-503, 22 LEd 2d 495, 89 S Ct 1252 (1969), "Fortner I," held that:

> "Our tie-in cases have made unmistakably clear that the economic power over the tying product can be sufficient even though the power falls far short of dominance and even though the power exists only with respect to some of the buyers in the market. See, *e.g., International Salt; Northern Pacific; United States v. Loew's Inc.,* 371 U.S. 38, 83 S. Ct. 97, 9 L.Ed. 2d 11 (1962). As we said in the *Loew's* case, 371 U.S. at 45, 83 S. Ct. at 102: 'Even absent a showing of market dominance, the crucial economic power may be inferred from the tying product's desirability to consumers *or from uniqueness in its attributes.*' " (Emphasis added)

Plaintiff contends, however, that mere uniqueness alone is not sufficient and that the Court in *United States Steel Corp. v. Fortner Enterprises, Inc.,* 429 US 610, 620-21, 51 LEd 2d 80, 97 S Ct 861 (1977), "Fortner II," held that:

> " '* * * [T]he question is whether the seller has some advantage not shared by his competitors in the market for the tying product.
>
> " 'Without any such advantage differentiating his product from that of his competitors, the seller's product does not have the kind of uniqueness considered relevant in prior tying-clause cases. * * *.' "

In *Fortner II,* however, the Court stated (at 619) that:

> "* * * the unique character of the tying product has provided critical support for the finding of illegality in prior cases. Thus, the statutory grant of a patent monopoly in International Salt Co. v. United States, 332 US 392, 92 L Ed 20, 68 S Ct 12, the copyright monopolies in United States v. Paramount Pictures, Inc., 334 US 131, 92 L Ed 1260, 68 S Ct 915, and United States v. Loew's Inc., 371 US

38, 9 L Ed 2d 11, 83 S Ct 97; and *the extensive land holdings in Northern Pacific R. Co. v. United States,* 356 US 1, 2 L Ed 2d 545, 78 S Ct 514, represented tying *products that the Court regarded as sufficiently unique to give rise to a presumption of economic power.*" (Emphasis added)

In this case the tying product is land — residential real property. Aside from the fact that defendant alleged that "some of [the] lots are of unique quality" and that plaintiff had a "strong position in the market for residential lots because at the time of the contract, they controlled a substantial number of lots of those available," it is generally held that land is "unique," at least for other purposes, such as specific performance. As this court stated in *Robertson v. Jones,* 280 Or 507, 511, 571 P2d 905, 907 (1977):

"Since *every piece of land, and especially a home, is in some sense unique,* purchasers under a valid contract are normally entitled to specific performance." (Emphasis added)

In *Connecticut v. Hossan-Maxwell,* 49 US Law Week No. 9, p. 2133-2134 (Conn Sup Ct, Aug. 5, 1980), it was held that residential real property is unique for the purposes of determining the validity of a tying arrangement, as in this case, and that the economic power in such a case would be presumed. We agree with the reasoning of the court in that case.

Defendant alleges not only that the lots were *unique,* but also that plaintiff "controlled a substantial number of lots of those available." Thus, there are two factual allegations to support the second element (sufficient economic power), i.e., uniqueness and control of supply of a commodity, whether unique or not.

For these reasons, we reject plaintiff's contentions that defendant's affirmative defense failed to plead sufficiently the "elements" required to establish an illegal tying agreement.

3.   *Plaintiff was required to designate such portions of the record as necessary to establish its contention that any error in striking defendant's affirmative defense was not prejudicial error.*

ORS 19.029 provides that the notice of appeal shall contain:

"(1)(d) A designation of those portions of the proceedings and exhibits to be included in the record in addition to the trial court file. * * * "

and that:

"(2) Within 10 days after the filing of the notice of appeal any other party may serve and file a designation of additional parts of the proceedings and exhibits to be included in the record. * * * "

■ It is well established that it is the duty of the appellant to designate and bring to the appellate court such portions of the record of the proceedings before the trial court as are necessary to support and establish his contention that the trial court committed the error of which the appellant complains on appeal. *See Reeder v. Kay,* 276 Or 1111, 1115, 557 P2d 673 (1976); *Coon v. Humble,* 238 Or 172, 174, 393 P2d 655 (1964).

In this case the ruling by the trial court striking defendant's affirmative defense was in response to plaintiff's motion to strike that defense upon the ground that such a defense cannot properly be pleaded in such an action on a contract, and we can assume, as did the Court of Appeals, that it was upon this ground that the trial court struck that defense, even though the trial court did not make that ruling until defendant had offered either some or all of its evidence in support of that defense.

It follows, in our opinion, that because such a defense can properly be pleaded in such a case, for reasons previously stated, the trial court erred in striking that defense as a matter of pleading. It also follows, in our opinion, that because the question whether an antitrust defense can properly be pleaded as an affirmative defense in such an action can be determined by an examination of the pleadings, including the pleading of the affirmative defense, when defendant designated and brought before the appellate court the pleadings in this case, including its affirmative defense, defendant satisfied the requirement that it bring before the appellate court such portions of the record before the trial court as were necessary to establish

that the trial court erred in allowing plaintiff's pretrial motion to strike that defense.

Plaintiff's contention in this case is to the effect that even if it was error for the trial court to strike that defense, any such error was not prejudicial error and that defendant failed to designate and include in the record on appeal either the testimony or the exhibits offered by it to establish its claimed antitrust violations. Defendant contends, on the other hand, that the trial court allowed plaintiff's motion to strike before defendant had completed its case and that once the trial court had allowed plaintiff's motion to strike, defendant was precluded from offering all of its evidence in support of that affirmative defense.

In *Elam v. Soares,* 282 Or 93, 102-103, 577 P2d 1336, 1341 (1978), this court held that:

"In many cases this court has held that when error is committed in the trial of a civil case, as well as in the trial of a criminal case, this court will presume the error to have been prejudicial unless the court can affirmatively say, from an inspection of the record before it, that the error was not prejudicial."

This court in *Elam* questioned (at p. 103) the use in the appellate context of the terms "presumptions" and "burden," as used in the trial context and held that:

"'* * * a more accurate statement of the proper rule to be applied by this court in appeals in civil cases is as stated in the more recent case of *Meyer v. Harvey Aluminum,* 263 Or 487, 501 P2d 795 (1972), in holding (at 495) that:

"'* * * Ordinarily, erroneously admitted evidence is deemed [by this court in the appellate process] prejudicial unless the contrary is affirmatively shown. * * *' "

We believe that it follows from our holding in *Elam* that an appellant is required only to designate such portions of the record as necessary to demonstrate that the trial court committed error, and that if the respondent in such a case contends that any such error was not prejudicial and that additional portions of the record will support such a contention, he must designate and bring before the appellate court any such additional portions of the record.

In this case respondent failed to do so. For that reason we hold that plaintiff has failed to establish its

contention that any error by the trial court in sustaining plaintiff's motion to strike defendant's affirmative defense was not prejudicial. For these reasons, we also hold that the Court of Appeals was incorrect in its holding that it was unable to determine whether the trial court erred in allowing plaintiff's motion to strike defendant's affirmative defense because defendant failed to designate and provide that court with a record to demonstrate that it had made an "evidentiary showing" sufficient to support the allegations of its affirmative defense.

The basis for that holding by the Court of Appeals appears (at 156) to be its understanding that:

"[T]he trial court did not rule on [plaintiff's] motion [to strike] until defendant had put on its case. Hence, defendant had a full opportunity to prove the defense before it was stricken."

Based upon that understanding, the Court of Appeals held that plaintiff's motion to strike was "functionally identical" to a motion for a directed verdict, and that in such an event defendant would have been required to designate the evidence in order to sustain its burden to show that the trial court erred in allowing that motion.

It appears from the record, however, that there is a dispute between the parties whether, as contended by plaintiff, the trial court did not rule upon the motion until the conclusion of defendant's case, at which time plaintiff renewed its motion, or whether, as contended by defendant, it was *during* defendant's case that the trial judge announced that he had by then had an opportunity to study plaintiff's previous motion to strike and had decided that it should be allowed.

If defendant's version of these facts is correct, it would follow that plaintiff's motion to strike could not properly be considered as the functional equivalent of a motion for a directed verdict, as held by the Court of Appeals. In view of this dispute between the parties, we believe that in order for plaintiff to successfully contend as respondent that the ruling by the trial court was the functional equivalent of a motion for a directed verdict, plaintiff should have designated at least such portions of the record as would show when the trial court allowed

plaintiff's motion to strike and whether plaintiff at that time had renewed that motion.[1]

For these reasons, we hold that the decision by the Court of Appeals must be reversed and that this case must be remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

[1] It should also be noted that specific grounds for a motion for directed verdict must be stated by the moving party. ORCP 60; *Remington v. Landolt*, 273 Or 297, 303, 541 P2d 472, 475 (1975). Plaintiff-respondent points to no grounds for its motion other than the contention that the defense of antitrust illegality was *unavailable* to defendant-appellant as a matter of law, raising a question which required no reference to an evidentiary record to resolve.

In addition, it should be noted that this is not a case in which a defective pleading is challenged by demurrer at the end of the proponent's case, as in *Spears v. Huddleston*, 265 Or 168, 508 P2d 438 (1973). In *Spears* we held (at 178) that in such a case the court must consider whether the evidence was sufficient to establish any necessary fact which was not alleged, in the absence of surprise or prejudice. In this case, defendant's pleading was not defective, and there is a dispute whether plaintiff renewed its motion to strike at the end of defendant's case. Also, plaintiff's motion to strike was not made on the ground that defendant's pleading was defective in the sense that it failed to plead an essential element of the defense.