**LYNCH DISPLAY CORPORATION,**
Appellee,

v.

**NATIONAL SOUVENIR CENTER, INC.
and Historical Reviews, Inc.,**
Appellants,

v.

**NATIONAL HISTORICAL MUSEUM,
INC., Appellee.**

Court of Appeals of Tennessee,
Eastern Section.

April 20, 1982.

Permission to Appeal Denied by
Supreme Court Oct. 25, 1982.

Jack M. Tallent, II, of Kennerly, Montgomery, Howard & Finley, Knoxville, and Jerome S. Wagshal, Washington, D.C., for Historical Reviews, Inc., appellant.

Richard T. Sowell and R. Louis Crossley, Jr., Knoxville, for Nat. Historical Museum, Inc., appellee.

Ronald E. Sharp of Hailey, Waters, Sykes & Sharp, Sevierville, for Lynch Display Corp., appellee.

## OPINION

PARROTT, Presiding Judge.

In this case we are asked to decide difficult questions concerning the use of state and federal antitrust laws as defenses to an action on a lease contract. To our knowledge, these questions have not previously been addressed by a Tennessee court. We are also asked to rule on the admissibility of certain evidence relevant to the amount of payments due under the lease contract in question. As to the antitrust defenses, we hold as a matter of law that they are available, but only when applicable to the particular fact situation. In this case, the chancellor below was correct in his conclusion that the defense based upon the Tennessee antitrust provision was not available. However, a very recent decision of the United States Supreme Court entered after the chancellor's decree indicates that the defense under the federal anti-trust statutes is available. For reasons on which we will later elaborate, we hold that the federal defense is available in a Tennessee court under these facts. Finally, we feel that the

chancellor should have allowed the lessee in this case to introduce evidence for the court's consideration tending to show changed circumstances under the lease. Thus, we must reverse the chancellor on this point.

At the heart of this dispute is a lease contract between Historical Reviews, Inc., (HRI), a Tennessee Corporation operating a wax museum in Gatlinburg, and Lynch Display Corporation, (Lynch), a Maryland corporation manufacturing and leasing wax figures for museums. HRI is a wholly owned subsidiary of National Souvenir Center, Inc., a District of Columbia corporation that is also a party to this suit.

On June 1, 1962, Lynch agreed to manufacture and lease to HRI approximately 90 wax figures to be displayed in a wax museum in Gatlinburg. The lease agreement included a provision that required HRI to enter into a franchising agreement with National Historical Museum, Inc., (NHM), a District of Columbia corporation. The franchising agreement was required by virtue of an existing agreement between Lynch and NHM. The franchise agreement required HRI to pay five percent of its gross receipts to NHM in addition to the approximately 15 percent of gross receipts to be received by Lynch as the primary rental charge. Payments were made up to the middle of 1977.

In July 1977, HRI filed a complaint in the United States District Court for the District of Columbia alleging that Lynch and NHM had violated the Federal antitrust laws and that the lease and franchising agreements were a product of unlawful conduct. This case is still pending in federal court.

In a complaint filed March 7, 1979, Lynch brought suit against HRI in Sevier County Chancery Court to recover the lease payments owed under the original contract. HRI then brought a counterclaim against the original plaintiff Lynch, and also naming NHM as a third-party defendant, claiming that the original lease and franchising agreement were forced on HRI because of the monopoly position of Lynch in the manufacture of wax figures and that they were

therefore void under T.C.A. § 69–101, the Tennessee antitrust statute. HRI also raised the Tennessee antitrust statute and federal antitrust law as defenses to Lynch's suit on the lease contract. HRI's motion to dismiss the entire case because the same issues were pending in federal court was denied by the chancellor. This Court refused an interlocutory appeal on this ruling.

HRI further contended in its counterclaim that Lynch and NHM had been exacting money from them for almost 20 years by improper methods because the terms of the lease and franchise agreement were unconscionable and therefore unenforceable. The trial court granted Lynch and NHM's motion for summary judgment on the counterclaim, finding that the activities of the parties "were acts exclusively in interstate commerce and therefore not within the purview of the Tennessee Antitrust Act." The court also found that "the respective parties were fully counseled, advised, and competent to contract and that the lease was not unconscionable," that HRI could not bring evidence tending to show that admission income should be allocated between the Lynch figures and other figures later added on by HRI (most notably an Elvis Presley figure), and that the defense based on federal antitrust law was unavailable in a Tennessee court as a matter of law. Judgment was then entered against HRI in the amount of $241,756.37. HRI and National Souvenir Center now appeal to this court.

■ The first issue which this Court will address is whether the Tennessee antitrust statute is available as a defense in this case. The chancellor below did not specifically reject this defense in his memorandum opinion, but did so by implication in his dismissal of the federal antitrust defense. The chancellor did, however, give specific reasons for his granting of summary judgment on appellants' Tennessee antitrust counterclaim. We feel that the chancellor was correct in his reasoning on the counterclaim issue, and that this reasoning is equally applicable to the use of the Tennessee antitrust statute as a defense. Although we affirm the chancellor's ruling on the use

of the Tennessee statute as both a defense and counterclaim, we feel it necessary to emphasize that T.C.A. § 69–101 can be available as a defense on a lease contract, but that it was simply not applicable in this case.

T.C.A. § 69–101 reads as follows:

"Trusts and combinations lessening competition or controlling prices unlawful and void.—All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen full and free competition in the importation or sale of articles imported into this state or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void."

T.C.A. § 69–108 specifically makes § 69–101 available as a defense:

"Trust or combination may be pleaded in abatement or bar of suits.—When action at law or suit in equity shall be commenced in any court, it shall be lawful, in the defense thereof, to plead in bar or in abatement of the action that the plaintiff, or any other person or corporation interested in the prosecution of the action, is a member or connected with, and the cause of action grows out of, some business or transaction with such trust, pool, contract, arrangement, or combination as described in either of §§ 69–101 or 69–102."

The true issue here, then, is whether our antitrust law is applicable to the substantive facts of this case. We agree with the chancellor below that it is not.

■ The Tennessee antitrust law applies to transactions which are *predominantly* intrastate in character. The transaction does not have to be *exclusively* intrastate to be affected. The old constitutional doctrine of mutual exclusivity between state and federal laws affecting commerce has long been rejected. *South Carolina Highway Dept. v. Barnwell Bros.*, 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734 (1938); *Union Brokerage Co. v. Jensen*, 322 U.S. 202, 64 S.Ct. 967, 88 L.Ed. 1227 (1944). The Tennessee Supreme Court has recognized this fact in the important opinion *Standard Oil Co. v. State*, 117 Tenn. 618, 100 S.W. 705 (1906):

"A combination affecting interstate commerce is none the less a violation of the federal antitrust statute and punishable under it, where the agreement made incidentally affects intrastate commerce; and the same rule will apply to combinations made in violation of the statute of the State upon the same subject, where interstate commerce is incidentally affected. If it were otherwise, neither the federal nor the State laws could be enforced in any case."

■ In this case, the subject of the dispute—a lease contract between a Tennessee corporation and a Maryland corporation and an associated franchise agreement between a Tennessee corporation and a District of Columbia corporation—is predominantly interstate in character on only incidentally affects intrastate commerce. The chancellor summarized these agreements in his memorandum opinion:

Among other provisions, the Lease Agreement provided:

"(a) That the wax figures were to remain the property of Lynch Display Corporation.

(b) The figures to be delivered to the Lessee in Washington, D.C., or Baltimore, Maryland, by a certain fixed date.

(c) The Lease to be for a term of nineteen (19) years and four (4) months.

(d) The payment of certain specified rentals during the term of the Lease.

(e) The Lessee enter into a Franchising Agreement with National Historical Museum as required by an existing agreement between Lynch Display Corporation and National Historical Museum, Inc.

(f) The lease figures to be used only by Lessee and its employees and only in Les-

see's Museum premises in Gatlinburg, Tennessee.

(g) The lease could not be assigned.

(h) Upon termination of the lease all wax figures to be delivered up by the Lessee to the Lessor at Baltimore, Maryland, or Washington, D.C.

(i) That all rental payments be made to Lessor (that is, Lynch Display Corporation) at its office in Baltimore, Maryland, or Washington, D.C.

(j) That Lessor would not sell or lease similar life-like figures to any other person or entity within a radius of two hundred (200) miles of Gatlinburg, Tennessee.

The Franchise Agreement entered into by the Defendant, Counter-Plaintiff, Historical Reviews, Inc., and the Third Party Defendant, National Historical Museum, a Washington, D.C., Corporation, provided among other things the following:

(a) That Historical Reviews, Inc., lease wax figures from Lynch.

(b) That National Historical Museum provide certain services to Historical Reviews, Inc. in connection with the establishment, layout, and maintenance of a museum to exhibit such figures.

(c) The payment by Historical Reviews, Inc., of a percentage of the gross receipts from the exhibition of such wax figures as consideration for National Historical Museum's services.

(d) That the laws of the District of Columbia govern the interpretation of the Agreement and all matters pertaining thereto."

We agree with the chancellor that the predominant character of these agreements is in interstate commerce. The goods, services, and payment for them is flowing between parties in different states. Appellants argue in their briefs that the wax museum has been established in Gatlinburg for 17 years and regularly sells tickets to customers in exchange for admission and that this fact establishes significant intrastate commerce. Although this is unquestionably intrastate commerce, it is of a nature incidental to the predominant agreements in this dispute. Hence, the Tennessee antitrust statute does not apply.

■ The next issue for this Court's consideration is whether appellants may bring as a defense to this lease contract a violation of federal antitrust law. After careful consideration and a review of all relevant law, we conclude that appellants *may* bring such a defense in a Tennessee court. Our reading of the most recent United States Supreme Court opinion on this matter, a survey of other states' treatment of the same problem, and an assessment of the policy factors at stake convince us that this is the correct ruling. When applicable to the particular facts in a dispute, federal antitrust law may be raised as a defense to a lease contract in Tennessee.

■ The chancellor below dismissed appellants' federal antitrust defense as a matter of law:

"This Court is of the opinion that the better rule is the rule which has been adopted in some states which says that these matters pertaining to the Sherman and Clayton Antitrust Act (sic) are not admissible in defense to an action in the State Court.... Tennessee should adopt the view that these matters are best left to Federal Court, the motion to strike will be sustained in so far as the defenses set out therein rely upon as a defense the alleged violation of the Sherman and Clayton Anti-trust Acts."

The chancellor in large part based this finding upon a section from *Am.Jur.2d:*

"Exclusive federal court jurisdiction of federal antitrust cases has been held to preclude the assertion in state court of a counterclaim or defense based on the federal antitrust laws. Because of the exclusive federal court jurisdiction of suits under 15 USC § 15, a state court has been held without jurisdiction of a defendant's counterclaim under 15 USC § 15 in a state suit on a contract. In a state court suit on a contract, some states have held that their courts lack jurisdiction to entertain the defense that the contract is unenforceable because it violates the federal antitrust laws, but other states have held to the contrary."

54 *Am.Jur.2d* "Monopolies, Restraints of Trade, and Unfair Trade Practices" § 265, p. 819 (1971).

As will be discussed later, the majority rule and best rule from state decisions favors consideration of federal antitrust defenses in state courts. Our first focus, however, will be on United States Supreme Court decisions.

The chancellor below did not have the benefit of the recent decision in *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982). In that case the United Mine Workers sued Kaiser Steel Corporation in federal court to enforce a provision in an industry labor agreement that required Kaiser and other coal users to pay a specified amount to UMW's health and retirement funds for each ton of coal purchased from nonunion producers. Kaiser raised as a defense to this action the assertion that the provision in question was in reality a penalty and restraint of trade in violation of the Sherman Antitrust Act. This defense was dismissed by both the district court and the court of appeals. The United States Supreme Court reversed, holding that the antitrust defense was proper.

In *Kaiser Steel,* the Court balanced two strongly-held policy considerations: The disinclination to allow a contracting party to escape obligations owed under a contract; and the continuing need to strike down agreements in restraint of trade as a national policy evidenced by the Sherman Act. In short, contract obligations versus illegality of contract. The Supreme Court concluded that the national policy interest in the preservation of free trade was most compelling in this case: "It is plain enough that to order Kaiser to pay would command conduct that assertedly renders the promise an illegal undertaking under the federal statutes." Thus, the Court remanded the case so that Kaiser Steel could raise its defense.

To rule as it did in *Kaiser Steel,* the Supreme Court had to distinguish its decision in *Kelly v. Kosuga,* 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959). We feel that the interpretation and application of this distinction is dispositive in the present case. In *Kelly,* plaintiff sued to enforce a contract to purchase a quantity of onions from defendant. In a separate agreement, these same parties had conspired to raise the price of onions on the futures market by not delivering any onions for the remainder of the season. Defendant raised as a defense to the suit on the purchase contract that the overall transaction was in restraint of trade, violated the Sherman Act, and thus could not be enforced because of illegality. The Supreme Court rejected the defense on these facts, saying "the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court. This has been notably the case where the plea has been made by a purchaser in an action to recover from him the agreed price of goods sold." 358 U.S. at 518, 79 S.Ct. at 431.

The *Kaiser Steel* Court distinguished *Kelly* on the facts. In essence, the contract sued upon in *Kelly* was, in and of itself, perfectly legal. It was the other, separate agreement that raised antitrust questions. In *Kaiser Steel,* on the other hand, enforcement of the contract provision complained of would have constituted an effective restraint of trade which is barred by the Sherman Act. It seems to us that the facts of the present case more closely correspond with those in *Kaiser Steel.* Although the practical effect of the opinion in *Kaiser Steel* is problematical in that it seems to require a threshold consideration of the merits of the defense to decide if that defense can be heard at all, it seems to us that appellants were attacking in at least part of their pleaded defenses the legality of the lease contract upon which appellees were suing. This comports with the distinction drawn in *Kaiser Steel,* and indicates that the federal antitrust defense is appropriate here.

*Kaiser Steel* does not specifically answer the question of whether a federal law defense may be brought in a state court. Other authority and policy considerations indicate that it should be allowed. Appel-

lants cite with persuasiveness *E. Bement & Sons v. National Harrow Co.,* 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed.2d 1058 (1902), for the proposition that a federal antitrust defense may be heard in a state court. In that case, which originated in a New York court, the Supreme Court stated: "... we are nevertheless of opinion that anyone sued upon a contract may set up as a defense that it is a violation of the act of Congress, and, if found to be so, the fact will constitute a good defense to the action." This holding has never been overruled. *Kaiser Steel* cites *E. Bement & Sons* favorably. In *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), this same rule was indicated in another context.

In the state courts, the majority follows the holding in *E. Bement & Sons. See, e.g., Harold Butler Enterprises # 97, Inc. v. Vanlandingham,* 264 Or. 414, 505 P.2d 1149 (1973). For several reasons, we feel that allowing the federal defense in our state court is the best rule. To begin with, federal law is frequently applied in state courts. One example is the Truth in Lending Act. We do not feel that it is an unreasonable proposition that appellants in this case should be allowed to avail themselves of all proper defenses when they are sued upon a contract. Appellees' implication that this federal antitrust matter is somehow inappropriate in this case because of complexity is not persuasive. It should be remembered that appellants first brought their antitrust action in federal court, a more appropriate forum. That they now seek to air these issues where the case is first being heard is not objectionable. Further, Tennessee courts should not be in the position of proceeding without consideration of national policy as expressed in the federal antitrust acts, *when such consideration is appropriate.* In this case, we feel that it is. The chancellor should have allowed appellants to raise their federal antitrust defense.

█ Finally, we feel that the chancellor was too narrow in his consideration of the terms under the original lease contract between Lynch and HRI. If HRI is liable on the lease for unpaid rent, we feel that all matters relevant to the amount of that rent should be considered by the court. The terms of the contract do not seem to have spoken conclusively on the issue of rent calculation in the event of *added* wax figures. This being the case, the intent of the parties at the time of contract becomes relevant to an equitable determination of what is owed. Appellees maintain that the rent calculation provision of the lease is utterly clear and not subject to any confusion:

"The term gross receipts as used in this Agreement, includes and shall be based upon all proceeds and gross receipts of Historical, including, but not limited to admission fees and charges and proceeds from sales of tickets to any exhibits, or displays located, owned and/or operated by Historical in said premises derived from the operation of said museum...."

Appellees assert that the parole evidence rule bars all other evidence concerning this provision, but the meaning of terms can change as the context in which they are used changes. Thus, we feel that evidence of the background to this lease is both relevant and admissible:

"No one disputes the proposition that you cannot vary the terms of a written contract nor contradict it by oral evidence, but these rules do not restrain the Court from a survey of the whole situation and an ascertainment of that which the parties had in mind and the purpose or object to be obtained by a proposed agreement."

*Frierson v. International Agricultural Corp.,* 24 Tenn.App. 616, 148 S.W.2d 27 (1940). *See also Kroger Co. v. Chemical Securities Co.,* 526 S.W.2d 468 (Tenn.1975).

The chancellor below also rejected appellants' proffered evidence concerning the allocation of rent between figures leased from Lynch and figures later obtained from other sources as being too speculative. Had this evidence been before a jury, the chancellor's ruling may have been more justified, but as it was, we feel that the chancellor should have allowed appellants to present this evidence for his total considera-

tion of the amount of rent owed. This evidence does seem to be speculative, but we do not feel it prejudicial or irrelevant in this case. Changed circumstances is a legitimate consideration in equity. *See generally, Gibson's Suits in Chancery* § 19 (1982).

We remand this case for a reconsideration consistent with the principles stated herein. Let the costs of this appeal be equally divided between the parties. All other costs will abide the outcome and be taxed by the chancellor.

GODDARD, J., and T. MACK BLACKBURN, Special Judge, concur.